483 So.2d 318 (1986)
Kimberly L.J. SPAIN
v.
Allen E. HOLLAND.
No. 55848.
Supreme Court of Mississippi.
January 22, 1986.
Beverly B. Mitchell, Colom, Mitchell & Colom, Columbus, for appellant.
L. Marshall Goodwin, Jordan & Woolbright, Columbus, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This appeal requires that we confront a question of first impression before this Court. Should the chancery courts of this state interfere with a divorced custodial parent's planned movement of minor children to a foreign nation incident to that parent's pursuit of a reasonable professional or economic opportunity?
In the case at bar a non-custodial divorced mother has objected to her ex-husband, a career Air Force non-commissioned officer, *319 taking their six year old daughter and four year old son to England where he has been transferred for a four year tour of duty. The mother has alleged that this constitutes a material change of circumstances which would adversely affect the welfare of the children and has asked that custody be vested in her. The trial judge denied her plea. On these facts we affirm.

II.
On February 4, 1983, Allen E. Holland ("Allen") and Kimberly L.J. Holland ("Kimberly") appeared before the Chancery Court of Lowndes County, Mississippi, each seeking a divorce of and from the other. Two children had been born of their marriage, namely, Heather Ambre Holland, a female, born September 5, 1977, then five years of age, and Ryan Allen Holland, a male, born April 30, 1979, then three years old. On that date the Chancery Court entered its final decree awarding Allen a divorce of and from Kimberly and placing the children within the "complete care, custody and control" of their father, Allen,
subject to Defendant's [Kimberly's] right of reasonable visitation with said children at any and all reasonable times upon reasonable notice... .
Some six months later on August 14, 1983, Kimberly married Thomas Richard Spain. She resides with her new husband in Columbus, Mississippi. Allen has not remarried. At the advent of the instant proceedings Allen was a non-commissioned officer in the United States Air Force holding the rank of Staff Sargeant, E-5, and was stationed at the Columbus Air Force Base.
The present controversy began in September of 1983 when Allen found that his request for a tour of duty in England would be granted. Kimberly was advised that Allen planned to take the children to England with his original departure time scheduled for February, 1984. Allen's departure was subsequently postponed until April, 1984.
On December 29, 1983, Kimberly filed in the Chancery Court of Lowndes County a motion to modify the child custody features of the February 4, 1983 decree. Kimberly alleged a material change of circumstances since the earlier decree and charged that Allen had defaulted in many particulars in his responsibilities as a custodial parent. More to the point, Kimberly charged that Allen's planned transportation of the children to England would result in irreparable harm to them. On these grounds, Kimberly asked that custody be transferred to her, subject to reasonable rights of visitation in Allen. Allen, of course, answered and denied the material allegations of the motion.
The matter was called for hearing in Chancery Court on February 7, 1984. On that date the Court delivered an opinion in which it found that
the father is in the Air Force, as he was at the time of the divorce. The proof shows that the children are in a school/nursery on the Columbus Air Force Base. The proof further shows that the father takes good care of the children. He devotes a great deal of time with them. The proof further shows that the father is going to be transferred to an air base in the United Kingdom on or about April of this year. He will probably only get about three weeks vacation or leave each year, and plans to bring the children back to the United States during his leave.
The mother, of course, will not likely get to see the children except once a year. His term of duty is to be four years.
In the end, the court held
that there has not been a material change of circumstances ... which ... affects the children's welfare adversely.
On February 24, 1984, this finding was carried into effect by a formal order wherein the court again found "that there has not been a material substantial change of circumstances since February 4, 1983, the date of the decree of divorce in these premises," and denied Kimberly's request for custody modification.
*320 Being aggrieved at this result, Kimberly has appealed to this Court.

III.
Kimberly's sole assignment of error suggests that the trial judge erred in refusing to interfere with Allen's plan to take the two children to England. This was error because, as she phrases it,
the evidence clearly showed that the father was in the Air Force; had not remarried; had volunteered for a four year tour of duty in the United Kingdom; knew no one in the United Kingdom; had no relatives in the United Kingdom; that the children would only get to visit with the Appellant [Kimberly] once a year for a few weeks; and that a prolonged separation of the children from Appellant [Kimberly] would be devastating, especially for the daughter.
As in all child custody cases our "polestar consideration ... is the best interest and welfare of the children", Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983), but that consideration has been considered. The February 4, 1983 decree constitutes a judicial determination that the best interest of these children is served by their being in the custody of their father. For such a decree to be modified so as to change custody to the non-custodial parent, that parent must prove a material change in circumstances which adversely affects the children's welfare. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Denney v. Denney, 453 So.2d 693, 694 (Miss. 1984); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983). In considering whether there has been such a change, the totality of the circumstances should be considered. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984); Kavanaugh v. Carraway, 435 So.2d 697, 700 (Miss. 1983). Even though under the totality of the circumstances a change has occurred, the court must separately and affirmatively determine that this change is one which adversely affects the children.
Here the trial judge found that there had been no material change in circumstances adversely affecting the children. Yet moving these children to England is in fact quite a change in their lives. Phrased more correctly and candidly, we consider that the trial judge has found as a matter of ultimate fact that the change in circumstances which obviously was about to occur would not be one which would adversely affect the children. The critical point is the trial judge's implicit determination of a lack of an adverse effect.
On this appeal Kimberly runs headlong into established limitations upon our scope of review. Findings of fact made by a chancellor simply may not be set aside or disturbed on appeal unless manifestly wrong. See, e.g., Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978). It is similarly so whether the fact be found expressly or by necessary implication. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985). This is so whether the finding of fact relates to an evidentiary fact or, as here, an ultimate fact. Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); Cheek v. Ricker, 431 So.2d 1139, 1143 (Miss. 1983). This limitation upon our scope of review applies to our review of the specific ultimate fact question at issue here, viz. whether there has been a material change in circumstances adversely affecting the welfare of a child. Tucker v. Tucker, 453 So.2d 1294, 1296-97 (Miss. 1984).
We need be clear what we mean by the phrase "adverse effect". These children have already been adversely affected by the inability of their mother and father to live together which led to the 1983 divorce. Beyond this, most children of divorced parents will be further adversely affected if the two parents are living in the same town at the time of the divorce and either subsequently moves thousands of miles away. Where such occurs we solve nothing by shifting custody to the parent staying at home for, in theory at least, a transcontinental separation from either parent will adversely affect the child. The judicial eye in such cases searches for adverse effects *321 beyond those created (a) by the divorce and (b) by the geographical separation from one parent.
We close our eyes to the real world if we ignore that ours is a mobile society. Opportunity and economic necessity transport perfectly responsible adults many miles from their homes. In this context, almost seventeen years ago we found no material change in circumstances when a custodial parent moved 600 miles to San Antonio, Texas. Brocato v. Walker, 220 So.2d 340, 344 (Miss. 1969). Only last year we refused to interfere with a Coast Guard officer custodial father's taking his children to his new station in Hawaii. Pearson v. Pearson, 458 So.2d 711, 713 (Miss. 1984). We regard as legally irrelevant to the matter of permanent custody the fact that taking the children to a distant state effectively curtails the noncustodial parent's visitation rights.
This Court has never directly confronted a noncustodial parent's objection to the custodial parent's taking the children outside of the United States and to a foreign nation. But see, Turner v. Turner, 331 So.2d 903 (Miss. 1976). We find, however, that other states have faced this problem and have by and large refused to interfere with such international changes of residence. See, e.g., In Re Marriage of Ditto, 52 Or. App. 609, 628 P.2d 777 (1981) (New Zealand); Viltz v. Viltz, 384 So.2d 1348, 1349 (Fla.App. 1980) (Venezuela); Byers v. Byers, 370 S.W.2d 193 (Ky. 1963) (South Africa); Edwards v. Edwards, 191 Or. 275, 227 P.2d 975, 977 (1951) (Australia); Lane v. Lane, 186 S.W.2d 47 (Mo. App. 1945) (Mexico); Wilson v. Mitchell, 48 Colo. 454, 111 Pac. 21 (1910) (England).
Allen Holland's assignment to England for a four year tour of duty represents a legitimate professional opportunity. If we find no per se basis for interference with a custodial Coast Guard father's taking his children to our sister state of Hawaii, Pearson v. Pearson, 458 So.2d at 713, it is difficult to divine any rationale upon which we might interfere with an Air Force father's taking his children to our mother state of England, notwithstanding the necessity of our forcible emancipation from that mother state some 210 years ago.
By way of clarification, we recognize today that a custodial parent's taking his or her children to a foreign nation does not per se visit an adverse impact upon the children so as to require a change of custody to the parent remaining stateside. We do not foreclose the consideration by our trial courts of peculiar or unusual circumstances adversely affecting the children over and above the effect attendant upon the mere increase in miles between the children and the noncustodial parent.
In this case we find within the evidence the conclusion that, under the totality of the circumstances, Allen's move of his and Kimberly's children to England would have no adverse effect upon them. Because we may not fairly conclude on this record that the trial judge was manifestly wrong, this necessarily implicit finding of ultimate fact is beyond our authority to disturb.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.