587 So.2d 892 (1991)
Minor Ferris BUCHANAN
v.
Judith Ann BUCHANAN.
No. 91-CA-0083.
Supreme Court of Mississippi.
October 2, 1991.
As Corrected December 18, 1991.
*893 Harlon H. Varnado, William B. Kirksey, Jackson, for appellant.
Randy A. Clark, Stanfield Carmody & Coxwell, L.C. James, James & Associates, Ross R. Barnett, Jr., Barnett Law Firm, Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and BANKS, JJ.
ROBERTSON, Justice, for the court:

I.
Today's appeal arises from a post-trial judicial recusal motion, incident to an increasingly heated child custody modification dispute. The divorced spouses lived in Jackson, Mississippi, for several years under a shaky detente. The trouble started when the mother sought to accept a professional opportunity in Chicago and take the two young children with her. The trial judge terminated the theretofore existing joint legal custody, placed permanent custody with the mother with liberal visitation rights in the father. The present appeal turns on the question how the trial judge should have responded to a post-trial motion for recusal.

II.

A.
Judith Ann Buchanan ("Judith") and Minor Ferris Buchanan ("Minor") were husband and wife until June 15, 1988, when the Chancery Court of the First Judicial District of Hinds County, Mississippi, decreed them divorced. The Buchanans are well educated professionals. Judith holds a Ph.D. and a D.M.D. and for a number of years was principally affiliated with the University of Mississippi School of Dentistry in Jackson. Minor is a lawyer who maintains his office in Jackson.
Two children were born of the marriage, namely Holly Dean Buchanan, a girl, born January 19, 1984, and now seven and a half years old, and Cameron Ferris Buchanan, a girl, born October 7, 1985, and now almost six years of age. The 1988 divorce was granted on grounds of irreconcilable differences. Miss. Code Ann. § 93-5-2 (Supp. 1988). The Buchanans obtained approval of a custody, support, and property settlement agreement, wherein they would share joint legal custody[1] of the two children but where Judith would have primary physical custody, with Minor enjoying quite liberal but nevertheless rather specific visitation rights.
In 1990 Judith received and accepted the position of Assistant Dean of the University of Illinois School of Dentistry in Chicago and incident thereto proposed to move to Oak Park, Illinois, and take the children with her. After some discussions which produced no agreement, Judith filed in the Chancery Court of the First Judicial District of Hinds County, Mississippi, on July 16, 1990, a motion for modification in effect asking that she be allowed to take the children with her to the Chicago area and that the custody and visitation provisions of the final judgment of divorce be modified to conform to these new circumstances.[2] *894 Minor answered and cross-claimed, agreeing, in effect, that the custody arrangements had to be changed but asking that he be given the permanent custody of the children, subject to Judith's rights of visitation.
On August 27, 1990, all four judges of the Chancery Court of Hinds County, entered a joint order recusing themselves from any further action in this matter. The parties then applied to this Court for appointment of a special chancery judge to hear the case and on September 12, 1990, Chief Justice Roy Noble Lee entered an order providing:
That Honorable John Dunnam is hereby commissioned Special Chancery Court Judge for Hinds County to preside and conduct proceedings in the Buchanan modification matter.
See Miss. Code Ann. § 9-1-105(1) (Supp. 1990).
In early November, 1990, Special Judge Dunnam presided over an eight-day trial and on November 19, 1990, released a formal written opinion, the essence of which was that the Court granted Judith the "full physical and legal custody of the minor children," with permission to take them with her to her new residence in Oak Park, Illinois, subject to "liberal visitation" rights in Minor. The terms and provisions of this decision have been carried into effect by final judgment entered December 7, 1990.

B.
The issues tendered on the present appeal have another origin. Within ten days of Special Judge Dunnam's decision, Minor moved that Judge Dunnam withdraw his opinion and recuse himself from proceeding further. Minor charged that he had just come into possession of information which suggested that Judge Dunnam should have disqualified himself from hearing the case ab initio. In substance, Minor charged that Judge Dunnam's son-in-law was a student at the University of Mississippi School of Dentistry with whom Judith had been associated until very recently, that a number of the important witnesses Judith called at trial were also faculty members at the School of Dentistry, and that these faculty members possessed substantial powers to affect and enhance the professional future of Judge Dunnam's son-in-law. Minor sought a hearing on his motion and, on December 19, 1990, the Court convened for that purpose. Through counsel, Minor presented his motion but then, inexplicably, the Court refused to allow him to present evidence in support and elaboration thereof.
Thereafter the Court entered its formal order denying the motion to recuse and finding
that said motion should be dismissed with prejudice without the requirement of testimony, although the defendant was allowed to proffer all testimony and exhibits into the record.
Minor now appeals to this Court.

III.

A.
Subject to the disqualification question presented here, the merits of the Buchanans' custody modification matter are not before us. What is abundantly apparent is that Judith and Minor each is a more than fit and proper person to have permanent care and custody of these two children, and the only real question at trial was which of the two should have the primary physical custody, with liberal visitation rights in the other. We think it almost a certainty that neither party would have had grounds for appeal on the merits, whichever way the Court had decided the substantive issues.

*895 B.
This appeal concerns a satellite issue. The question before us is whether Minor's post-trial motion for recusal was so deficient on its face that the Court had authority to deny it as a matter of law. The question is not whether Minor's motion should have been granted but whether he was entitled to an evidentiary hearing.
We think it important to put before us the legal standards and in this regard, we begin with Miss. Const. Art. 6 § 165 (1890) which in pertinent part provides:
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties... .
In addition to the constitutional provision, the Mississippi statutes, § 9-1-11 (1972) contains similar language and provides:
The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity of consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties.
In the case at hand, neither the constitutional nor statutory provisions would appear to have prohibited Judge Dunnam from presiding. None of the parties were connected to Judge Dunnam by affinity or consanguinity, nor was Judge Dunnam ever of counsel in the matter. Judge Dunnam's son-in-law's presence as a student at the School of Dentistry did not render Judge Dunnam "interested" in the matter in any legally cognizable sense.
The Code of Judicial Conduct gives further guidance. Canon 3, subsection C[3] provides:
C. Disqualification
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has personal bias or prejudice concerning a party ...;
(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(2) A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.
(3) For the purposes of this section:
(a) the degree of relationship is calculated according to the civil law system.
The Canon enjoys the status of law and this Court enforces it as such. Collins v. Dixie Transport, Inc., 543 So.2d 160, 164 (Miss. 1989). Canon 3 C imports an objective standard: "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986). See Jenkins v. State, 570 So.2d 1191, 1192 (Miss. 1990); In Re Moffett, 556 So.2d 723, 725 (Miss. 1990); Collins v. Dixie Transport, Inc., 543 So.2d 160, 166 (Miss. 1989); Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989); Cantrell v. State, 507 So.2d 325, 328 (Miss. 1987); see also, Pearson v. Parsons, 541 *896 So.2d 447, 455 (Miss. 1989). The presumption is "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption)[.]" Turner v. State, 573 So.2d 657, 678 (Miss. 1990).

C.
Turning to the motion itself, we find Minor citing the aforesaid constitutional and statutory sections as well as Canon 3 C and attaching his personal affidavit. There Minor recited that, after trial and decision, he discovered that Judge Dunnam's son-in-law, Walter Lewis Guillot, III, was enrolled as a fourth year student at the University of Mississippi School of Dentistry. He charged that Judge Dunnam shared "a close family relationship" with his son-in-law. The affidavit recited further that five of Judith's witnesses were directly associated with the School of Dentistry, particularly including Dr. Orhan C. Tuncay, chairman of the Department of Orthodontics at the University of Mississippi School of Dentistry. Minor suggests that Judith has become romantically involved with Dr. Tuncay. Minor's affidavit further charges that Guillot had then pending a number of applications for post-graduate or orthodontic residencies and that Judith, by reason of her previous association with the School of Dentistry and Dr. Tuncay and the other faculty members "are all in a position to assist and aid Walter Lewis Guillot, III, in securing such a position." He suggests in the end that these factors are such that they present a circumstance under our objective standard wherein Judge Dunnam's impartiality could reasonably be questioned.
At the December 19 hearing, Judge Dunnam, as indicated above, refused to allow proof on the motion but did allow Minor to make a proffer of what his evidence would have been.[4] Minor produced extensive documents and records concerning Walter Lewis Guillot, III, from the School of Dentistry, suggesting Guillot's association with Judith, Dr. Tuncay, Dean John H. Hembree, Jr., and Dr. Joe Guisanti. Minor's lawyer said that, if permitted, he would call as witnesses Dr. Tuncay, and Dr. Guisanti, of the School of Dentistry, and that he would call as well Walter Lewis Guillot, III, and Robin Dunnam Guillot, Judge Dunnam's daughter. Counsel also advised that he would call Minor Buchanan, Holland Varnado, Minor's trial counsel, and others.
Substantively, Minor said he would prove, first, that a close relationship existed between Judge Dunnam and his son-in-law, that Guillot had been approved for a work-study program by Judith and had done research in the same field she was in, and that Dr. Tuncay was Guillot's immediate supervisor in the work-study program at the time of the trial; that Dr. Guisanti had been Guillot's counselor concerning some deficiencies in his academic performance, and that Dean Hembree had sent approximately twenty recommendations for Guillot to orthodontic schools around the country. Minor stated further that he would prove that this information had not come to his attention until several days after Judge Dunnam had announced his decision and that the above facts could not reasonably have been discovered prior thereto.

D.
The precise question before us is whether on this showing Minor presents a colorable claim for recusal. To begin with, Minor does not bring his case within Canon 3 C(1)(d)(iii). True, Judge Dunnam is related "within the third degree" to his daughter and Guillot is "the spouse of such a person," but Guillot does not "have an interest that could be substantially affected by the outcome of the proceeding." This Canon's concept of interest refers to a legal *897 interest that will be affected by the final judgment.
On the other hand, it is important to realize that Canon 3 C(1) states a general standard and that subparagraphs (a) through (d) are but illustrations which do not exhaust the field. The rule remains that a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. The question is not whether the judge, in fact, was biased or prejudiced against Minor[5] but whether a fair minded person, knowing all of the facts, might reasonably question the judge's impartiality.
We think in candor the answer to this question has to be in the affirmative, at least in our present procedural posture. The Court faced that most difficult of Solomonic choices. In deciding whether the children's best interests lay in granting custody to Judith or Minor, the Court would necessarily have to inquire carefully into the character and propensities of each. Judith's claims in this modification proceeding turn in substantial part on the credit she is given by the Court and, as well, the credit given by the Court to her witnesses, almost all of whom were associated with the School of Dentistry. If, in fact, Judge Dunnam has a close relationship with his son-in-law and if, in fact, his son-in-law has been under the substantial influence and tutelage of the people who are witnesses at the hearing, and if, furthermore, these witnesses have a substantial role to play in the Judge's son-in-law's professional future, we do not think it may be said, as a matter of law, that these are not circumstances where a fairminded, objective observer might reasonably question Judge Dunnam's impartiality. Accordingly, the Court below erred when it denied the motion on its face and when it refused to allow Minor to go forward with his evidence. Having said this, we are quick to emphasize that nothing said here should be taken as intimating the slightest view as to how the motion to recuse should ultimately be resolved. What  and all  we say here is that Minor was entitled to his day in court on the recusal question.

E.
There is an additional point, having to do with the matters of timing and diligence. Minor did not move that Judge Dunnam recuse himself until after the merits had been decided adversely to him, and in such a context we have, over the years, been quick to point out that we will not allow a party to take his chances with a judge about whom he knows of grounds for recusal and then, after he loses, file his motion. Where the party knew of the grounds for the motion or with the exercise of reasonable diligence may have discovered those grounds, and where that party does not move timely prior to trial, the point will be deemed waived. Ryals v. Pigott, 580 So.2d 1140, 1175-76 (Miss. 1990); City of Biloxi v. Cawley, 332 So.2d 749, 750 (Miss. 1976); McCune v. Commercial Publishing Co., 148 Miss. 164, 172, 114 So. 268, 269 (1927). The foregoing cases set forth our standards, and, on remand, the Court is directed to inquire carefully whether Minor may have waited too late to assert the present point.

IV.
A postscript. There are seldom times when we see much good coming from the delays so inevitably attendant upon the appellate process. Perhaps, just perhaps, this case might be the exception. We say this in the sense that we perceive from the record and briefs before us that both the parties and their lawyers became so intensely involved that their capacity for objective concern for the best interests of these two minor children seems to have been clouded. We hope that time has allowed these parties to reflect upon whether it is in the interest of these children that *898 these parties continue to litigate. For one thing, if they will read our cases in the field, they will see that many of the bones of contention bear marginal, if any, legal credibility or relevance, e.g., Minor's inference that Jackson is a better place to raise children than Chicago area. See, e.g., Spain v. Holland, 483 So.2d 318, 320-21 (Miss. 1986); Pearson v. Pearson, 458 So.2d 711, 713 (Miss. 1984).
The law affords no mathematical formula for deciding such cases, and, even when the trial judge sensitively assesses the factors noted in Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983) and progeny, the best the judiciary can offer is a good guess. We doubt it would be contrary to these children's best interests if Judith and Minor were to sit down and talk as the intelligent and mature adults they profess to be and resolve these matters without further civil warfare.
On the other hand, for one reason or another, we know and accept that there are times when people cannot agree, and the reason we have courts is to decide these cases. By reason of the very factors just noted, in cases such as this, almost more than in any other, the objective integrity and impartiality of the trial judge is of vital concern. Our best hope for public and litigant confidence in the process is that the trial judge be one whose impartiality might not reasonably be questioned by a fairminded objective observer, so that at the very least, in the end, the disappointed litigant might feel that the trial judge treated him fairly and did his best.

V.
The Chancery Court erred when it refused to allow Minor to offer evidence in support of his motion for recusal and when it denied that motion on its face. The order of the Chancery Court entered December 22, 1990, insofar as that order overruled and denied Minor's motion for recusal, is vacated and this matter is remanded to the Chancery Court of the First Judicial District of Hinds County, Mississippi, for further proceedings not inconsistent with this opinion.
Minor argues as well that Judge Dunnam's November 19, 1990, opinion and the judgment entered thereon should be vacated because he never took the oath of office prior to proceeding with this matter. He calls our attention to Miss. Const. Art. 6 § 155 (1890), which prescribes the oath of a judge and Miss. Code Ann. § 9-1-105(9) which provides that a special judge such as Judge Dunnam "shall take the office, if necessary." On remand, Minor may inquire into this matter, if he so desires.
VACATED AND REMANDED.
ROY NOBLE LEE, C.J., and HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] See Miss. Code Ann. § 93-5-24 (Supp. 1988).
[2] The 1988 court-approved child custody agreement provided:

Neither party shall remove the minor children from the jurisdiction of the Court on a permanent basis without first obtaining consent of the other party or the Court.
Judith now argues such a proviso was unenforceable. Bell v. Bell, 572 So.2d 841 (Miss. 1990); McManus v. Howard, 569 So.2d 1213 (Miss. 1990). Whether that be so, she was right to approach the court about the matter, as no party has the prerogative to ignore such an injunction, though the court may ultimately relieve her of it.
[3] Judge Dunnam was subject to this canon, though he was a special judge. The Code of Judicial Conduct includes at its end a section entitled Compliance With the Code of Judicial Conduct, and there provides certain exemptions in the case of part-time judges and judges pro tempore. We find nothing there relieving Judge Dunnam from the requirements of Canon 3. See Robinson v. Irwin, 546 So.2d 683, 684-85 (Miss. 1989).
[4] The Court's ruling and Minor's proffer were well within our procedural rules allowing such proffers either "in question and answer form" or by counsel "dictating into the record a statement of the evidence offered but excluded." Rule 103(b), Miss.R.Ev., and Comment thereto; Hill v. Thompson, 564 So.2d 1, 13 (Miss. 1989); Murray v. Payne, 437 So.2d 47, 55 (Miss. 1983); see also, Hammond v. Grissom, 470 So.2d 1049, 1053 (Miss. 1985).
[5] The only charge Minor makes in this regard is his suggestion that "the opinion of this court [of November 19, 1990] is replete with evidence of bias on the part of the trial judge." We have carefully reviewed the opinion and can say categorically that this is not even close to being a fair characterization of the opinion. If anything, the opinion is temperate in tone and fair in substance, at least on its face.