## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-CA-00441-SCT

*SANDRA MARIA JACKSON BREDEMEIER*

*v.*

*GARY DEAN JACKSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/15/94 |
| TRIAL JUDGE: | HON. J. N. RANDALL JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WALTER W. TEEL |
| ATTORNEY FOR APPELLEE: | HERBERT J. STELLY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 2/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/20/97 |

**BEFORE PRATHER, P.J., PITTMAN AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from a judgment by the Chancery Court of Harrison County which awarded custody of minors Christopher Dean Jackson (Christopher) and Michelle Nicole Jackson (Michelle) to Gary Dean Jackson (Gary) and required Sandra Jackson Bredemeier (Sandra) to pay monthly child support of $300 to Gary. In his written opinion, the chancellor determined that the original physical custody arrangement was not satisfactory and that the best interest of the children would be met by placement with the father. We agree with the findings of the chancellor and hereby affirm his placement of the children with and award of child support to the father, Gary Jackson.

### FACTS

¶2. Sandra and Gary married on May 26, 1979, and divorced on March 5, 1991. They are the parents of two children, Christopher and Michelle. Gary and Sandra divorced on the grounds of irreconcilable differences.

¶3. In the original divorce decree, the chancery court granted Sandra and Gary joint legal and physical custody of the children, and by agreement of the parents, the children lived in the mother's

house for one month and then the father's house one month, switching at the conclusion of each month. Gary was required to maintain medical insurance on the children and to divide with Sandra all non-insured costs for the children. Additionally, if Gary did not have access to a group or work-related policy, the children could be added to Sandra's group-related policy with Gary making payments to Sandra for the cost of the policy. Both parties were required to confer before engaging the services of any medical care providers. Gary was also required to pay Sandra $300 per month for child support for the minor children.

¶4. Following the divorce, both parties remarried, and from March 1991 to September 1991, Gary maintained the majority of the physical custody of the children. Gary filed a Complaint for Modification on June 9, 1992, seeking to modify the amount of child support, to require that no child support be paid, to require Sandra to maintain the medical insurance on the children, and to order that all other terms of the previous judgment remain in full force and effect. Sandra answered and counterclaimed, requesting the court to end the swapping schedule of the children, since it was highly disruptive, and to award her primary physical custody of the children. She also requested a judgment for all past due child support and support-related sums owing up to the hearing of the case.

¶5. In April 1993, the chancellor appointed Dr. Virginia DeRoma, a psychologist, to evaluate the children, and he reduced Gary's support payments to every other month, to account for those months when the children did not reside with him. Subsequently, the court, in July 1993, entered a temporary order which granted physical custody of Christopher to Gary and physical custody of Michelle to Sandra. Each party was required to pay the support expense for the child of which he or she had physical custody.

¶6. The chancellor determined in January 1994 that since the July 1993 order was temporary, it should allow a trial on the complaint for modification. In subsequent motions, Gary sought primary custody of both children, while Sandra sought custody of Michelle, along with an order of contempt against Gary for failure to pay medical bills and child support. Upon hearing the evidence presented, the chancellor granted joint legal custody to Sandra and Gary, the same legal status as the original divorce decree. However, he also granted Gary the primary physical custody of the children, subject to Sandra's rights of visitation. The chancellor also ordered Sandra to pay Gary $400 per month in child support, with certain limitations. The order required Gary to pay for major medical and hospital insurance for the children. Both parents were to split all health care expenses not covered by the insurance. The court also delineated visitation privileges for Sandra on weekends, holidays, and summer vacations. The chancellor denied Sandra's claims for contempt against Gary and her request for attorney's fees.

¶7. Sandra immediately filed a motion to reconsider on April 19, 1994, seeking to overturn the chancellor's earlier order. In an April 22, 1994 order, entered after the motion to reconsider, the chancellor affirmed his earlier order, except that he decreased Sandra's monthly child support obligation to $300. It is from this decision she appeals to this Court.

## DISCUSSION

**I. The court erred in not declaring a mistrial, not recusing itself, and allowing improper, prejudicial and irrelevant evidence into the record.**

## A. Improper, prejudicial and irrelevant evidence.

¶8. The evidentiary problem in this case arises with the chancellor's decision to allow in evidence a letter from the Bredemeiers (Sandra and Greg) to the Mississippi Board of Psychological Examiners. In the letter, the Bredemeiers criticized the practices of Dr. William Gasparrini, in relation to his evaluating the children for the court in the child custody case. Specifically, they suggested that Gasparrini purposely discredited Sandra in his evaluations and possibly acted negligently.

¶9. Sandra argues that Gary's counsel purposely introduced the letter to bias and prejudice the court, since the court frequently used Dr. Gasparrini as an expert. She says that the letter, which complains about Gasparrini, has nothing to do with whether or not she should be able to keep her daughter. On the contrary, this letter is relevant. It was written by the appellant, and it was in reference to the ongoing custody case. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *MidSouth Rail Corp. v. O'Connor*, 672 So.2d 1176, 1182 (Miss. 1996); *Mississippi Rules of Evidence*, Rule 401.

¶10. Evidence, though relevant, may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *M.R.E.*, Rule 403. The determination of relevancy of evidence is left to the sound discretion of the trial judge, whose determination will not be reversed in the absence of clear abuse. *Watts v. State*, 635 So.2d 1364, 1367 (Miss. 1994); *Williams v. State*, 543 So.2d 665, 667 (Miss. 1989). For a case to be reversed on the admission or exclusion of evidence, the ruling must result in prejudice and harm or adversely affect the party's substantial right. *Terrain Enter., Inc. v. Mockbee*, 654 So.2d 1122, 1131 (Miss. 1995).

¶11. At trial, Sandra's counsel asked her why the letter was sent, to which she responded that Dr. Gasparrini was not the original court-ordered psychologist, and that he may have had a problem with her cutting his pay in a previous job. However, as the letter reflects, the Bredemeiers were obviously dissatisfied with Dr. Gasparrini's conclusions, and they alleged in the letter that his conduct may have been negligent. Dr. Gasparrini's testimony bears directly on this case, for the court reviewed his and Dr. Virginia DeRoma's recommendations. The charges of negligence gave the court pause, and forced the court to examine Dr. Gasparrini's report and testimony for undue influence, which the chancellor ordinarily would not have had to do.

¶12. The court also expressly made clear that this letter was relevant to the personalities of the people trying to gain custody of the children, and that it would not base its decision on the letter alone. Further, the court found that Dr. Gasparrini was not subject to outside influence, thus indicating that those who wrote the letter may have been obstructive.

¶13. The chancellor's statements about a possible "obstruction of justice" was not prejudicial to the appellants. In fact, as the chancellor noted, the source of prejudice was the letter from the Bredemeiers to the Board of Psychological Examiners. However, when balanced against the letter's probative value, that prejudice was outweighed. Thus, the letter was correctly admitted, and the chancellor did not abuse his discretion.

## B. Recusal

¶14. Sandra also urges that the chancellor erred in not recusing himself. Canon 3(C)(1) of the Code of Judicial Conduct requires disqualification of a judge when his or her "impartiality might reasonably be questioned, including but not limited to instances where: (a) he [or she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Code of Judicial Conduct*, Canon 3(C)(1). In other words, would a reasonable person, knowing all the circumstances, harbor doubts about the judge's impartiality? *Frierson v. State*, 606 So.2d 604, 606 (Miss. 1992); *Rutland v. Pridgen*, 493 So.2d 952, 954 (Miss. 1986). This Court presumes that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a "reasonable doubt" about the validity of the presumption. *Turner v. State*, 573 So.2d 657, 678 (Miss. 1990). This Court reviews a judge's refusal to recuse himself using the manifest error standard. *Davis v. Neshoba County Gen. Hosp.*, 611 So.2d 904, 905 (Miss. 1992).

¶15. Sandra correctly notes that the question deals with the reasonable person standard. However, the judge learned about the letter through examination by counsel. Most appropriate is Sandra's notation of the discussion regarding the judge's friendship with Dr. Gasparrini. The chancellor stated at the hearing that he had high regard for Dr. DeRoma, the other psychologist, and Dr. Gasparrini. The chancellor also stated that he was friends with both of the attorneys in the case, to which neither attorney had an objection. Since the judge had used Dr. Gasparrini before, he should have had no reason to think that his use this time would be improper. Further, a reasonable person would not consider the judge's knowledge of the attorneys and court-appointed experts sufficient reasons to harbor doubts about the judge's impartiality.

¶16. Because the judge's relationship to Dr. Gasparrini did not appear to cast doubts on his impartiality, and because the judge evaluated the doctor's recommendations for indication of undue influence, the court did not err in not recusing itself from this case.

## C. Mistrial

¶17. Thirdly, the appellant assigns as error the trial judge's failure to declare a mistrial. A trial judge is in a better position to assess the effect of incidents which may require a mistrial than is this Court on appeal, and this Court will not reverse on the failure to grant a mistrial unless the trial judge abused his discretion in overruling the motion for a mistrial. *Walker v. State*, 671 So.2d 581, 622 (Miss. 1995); *Chase v. State*, 645 So.2d 829, 848-49 (Miss. 1994).

¶18. Sandra argues that the introduction of the letter to the Board of Psychologists was sufficient to warrant a mistrial. Given the discussion above regarding the relevance of the document, along with the judge's correct decision not to recuse himself, we find this argument to be without merit. The court did not abuse its discretion by failing to grant a mistrial.

## II. The court erred in failing to award custody of the female minor child to the appellant.

¶19. Sandra stresses that Michelle should be with her for several reasons, including the need for the female child to be with her mother and Sandra's primary role as a housewife, which would allow her to spend full time to take care of Michelle. Sandra basically asks for reinstatement of the prior

temporary custody arrangement, because nowhere in her argument does she mention a desire to have custody of Christopher **and** Michelle.

¶20. The thrust of the appellant's argument is that the chancellor did not correctly apply the test found in *Albright v. Albright*, 437 So.2d 1003 (Miss. 1983), regarding factors to be considered when determining the best interest and welfare of the child in a custody proceeding. Both parties agree that *Albright* is the proper test:

> Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of the employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Id.* at 1005.

¶21. In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody. *Bubac v. Boston*, 600 So.2d 951, 955 (Miss. 1992). A chancellor's finding of fact on such a matter will not be set aside or disturbed on appeal unless the finding is manifestly wrong or is not supported by substantial credible evidence. *Polk v. Polk*, 589 So.2d 123, 129 (Miss. 1991). It is similarly so whether the fact be found expressly or by necessary implication, and whether the finding relates to an evidentiary fact or an ultimate fact. *Spain v. Holland*, 483 So.2d 318, 320 (Miss. 1986).

¶22. In considering whether there has been such a change in circumstances, the totality of the circumstances should be considered. *Tucker v. Tucker*, 483 So.2d 318, 319 (Miss. 1986). Even though under the totality of the circumstances a change has occurred, the court must separately and affirmatively determine that this change is one which adversely affects the children. *Id.*

¶23. Although there is no "hard and fast" rule that the best interest of siblings will be served by keeping them together, this Court has been extremely hesitant to separate siblings when their parents divorce. *Sellers v. Sellers*, 638 So.2d 481, 484 (Miss. 1994); *Franklin v. Kroush*, 622 So.2d 1256, 1256 (Miss. 1993); *Arnold v. Conwill*, 562 So.2d 97, 100 (Miss. 1990). We have previously stated that:

> The Court shall in all cases attempt insofar as possible, to keep the children together in a family unit. It is well recognized that the love and affection of a brother and sister at the ages of these children is important in the lives of both of them and to deprive them of the association ordinarily would not be in their best interests.

*Sparkman v. Sparkman*, 441 So.2d 1361, 1362 (Miss. 1983), quoting dicta from *Mixon v. Bullard*, 217 So.2d 28 (Miss. 1968).

¶24. The testimony from the psychologists is very revealing. Dr. DeRoma examined Gary, Sandra, Christopher, and Michelle, and made several conclusions. Tests revealed that both children view their father more favorably than they do their mother. DeRoma also noted that the Bredemeiers had instances of excessive physical discipline while the Jacksons had none. She also noted that the stepmother, Linda Jackson, had a positive relationship with both children, while the stepfather, Dr. Bredemeier, had a strained relationship with them.

¶25. DeRoma stated in her deposition that she believed that the children should be kept in the same household, wherever the judge decided to place them. And, while noting that both Gary and Sandra had strengths and weaknesses which would factor into her recommendation, she noted that Gary showed greater strength in the educational area than Sandra. Finally, she acknowledged that both children expressed a desire to live with Gary. In her final recommendation, DeRoma noted that the testing data she analyzed suggested that the children's adjustment would be best promoted in the custody of Mr. Jackson.

¶26. Dr. Gasparrini also evaluated Christopher and Michelle. He recommended that Christopher be allowed to remain with his father, while participating in some kind of counseling with his mother. After interviewing Michelle, Gasparrini noted that she would probably adjust better if she were allowed to live in one home throughout most of the year and have visits on a regular basis from the non-custodial parent. At trial, he recommended that the father have custody of both children.

¶27. In his bench opinion, the chancellor determined that because both parties agreed to modification, there was no need to show that there was a material and substantial change in circumstances since entry of the original divorce decree and that the change adversely affected the children. Unfortunately, the chancellor did not reference any authority for his decision to do so. Nonetheless, even under the regular modification test, we believe that the chancellor's decision is not manifestly wrong.

¶28. The material change in circumstances warranting the modification is evident in this case. All parties and the court agreed that the split custody arrangement was not working. Both psychologists felt that the children should be in the same household, wherever that was. In a similar case, this Court upheld a chancellor's finding that "the advent of school age was a material change in circumstances that rendered the split custody of the child useless and even harmful to the child." *Torrence v. Moore*, 455 So.2d 778, 780 (Miss. 1984). In the instant case, there is no single incident that required a modification of custody. Rather, under the totality of the circumstances, many things occurred to create material change--both parties remarried, custody was temporarily modified, and the parties could not make either of the custody arrangements work. *See Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo. 1995)(finding that when parents are unable to make joint custody arrangement work, a change in circumstances justifying modification exists); *Rodriguez v. Rodriguez*, 801 S.W.2d 80, 84 (Mo. Ct. App. 1990)(finding that failure of custody arrangement where children changed residences between father's and mother's was one of several changes in circumstances warranting modification).

¶29. Further, there is no question that all parties believed that the children were being adversely affected as a result of the first custody arrangement and the temporary arrangement. In his written opinion, the chancellor stated that he considered all of the *Albright* factors and the possibility of breaking up the entire family unit, as well as the value of Dr. Gasparrini's statements in light of the

criticisms made by the Bredemeiers. It is clear that the chancellor kept in mind the best interests of the children in reaching his conclusion.

¶30. This Court's decision in *Stevison*, 560 So.2d at 180, is analogous to the case *sub judice*. The change in custody fits within the "unusual circumstances" exception, laid out in *Spain v. Holland*: "We do not foreclose the consideration by our trial courts of peculiar or unusual circumstances adversely affecting the children over and above the effect attendant upon the mere increase in miles between children and the non-custodial parent." *Holland*, 483 So.2d at 321. In the *Stevison* case, the unusual circumstances were split custody and the poor relationship between the mother and her son. *Stevison*, 560 So.2d at 180. The mother had custody of the daughter and moved to Alaska, separating the daughter and son, who previously were able to visit with each other every day. *Id.* This Court found that the chancellor was not manifestly wrong in deciding to modify child custody. *Id.* Similarly unusual circumstances are present in this case. Like the judge in *Stevison*, the chancellor here previously split custody of the sibling children. Further, Christopher and his mother have a very strained relationship, like the mother and son in *Stevison*. These unusual circumstances justify the chancellor's decision.

¶31. This Court also previously held that a chancellor did not err in awarding custody of a child to his father, where even though the mother may have presented enough evidence at trial to let one conclude that custody should have been awarded to her, the weight of the evidence in favor of the mother was not so great as to make an award of custody to the father erroneous. *Chamblee v. Chamblee*, 637 So.2d 850, 861 (Miss. 1994). Again, even though the chancellor never determined Sandra to be an unfit mother, and even though he recognized her many good qualities, the evidence is not so great as to make the grant of custody to Gary erroneous.

¶32. Sandra's assertion that the chancellor ignored many of the *Albright* factors is mistaken. Although the court had no statutory basis for considering Michelle's preference, this does not make the chancellor's decision manifestly wrong. A reading of the chancellor's opinion above reveals that he considered many factors in determining the placement of the children. The court reiterated that its primary consideration was the best interests of the children. Therefore, the chancellor cannot be held in error for awarding custody of Michelle to her father, Gary.

**III. The court erred in not finding the defendant/appellee in contempt of court for the failure to pay past due child support and medical bills.**

¶33. The original divorce decree required Gary to pay child support to Sandra in the amount of $300 per month, along with payment of certain medical and other expenses. Sandra asserts that between March 1993 and March 1994, Gary only paid her $150, which left a balance of $3,450 in back child support payments. Further, Sandra states that there are various medical bills for which Gary should be required to reimburse her.

¶34. This Court will not reverse a chancellor upon a finding of fact short of manifest error. *Milam v. Milam*, 509 So.2d 864, 866 (Miss. 1987). Contempt is to be determined upon the facts of an individual case and is a matter for the trier of fact. *Id.* A citation for contempt is proper only when the contemner has willfully and deliberately ignored the order or the court. *Stevison*, 560 So.2d at 180; *Cooper v. Keyes*, 510 So.2d 518, 519 (Miss. 1987). The chancellor determined that Gary had made any outstanding child support payments and we find no error here. Accordingly, there is no

basis for holding Gary in contempt and this point of error is without merit.

**IV. The court erred in awarding the amount of child support to the appellee.**

¶35. Sandra claims that there should have been no grant of child support to Gary, because she should have retained custody of Michelle. Sandra notes that her income is only $152 per month, and her ability to get another job to pay her $30,000 per year is irrelevant.

¶36. This Court consistently has held that it will not disturb a chancellor's determination of child support "unless the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion." *Grogan v. Grogan*, 641 So.2d 734, 741 (Miss. 1994). "The process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Cupit v. Cupit*, 559 So.2d 1035, 1036-37 (Miss. 1990). When a chancellor makes a ruling without specific findings of fact, this Court assumes that the chancellor resolved any factual disputes in favor of the appellee. *Goode v. Village of Woodgreen Homeowners Ass'n*, 662 So.2d 1064, 1071 (Miss. 1995).

¶37. This Court recognizes several factors for a chancellor to consider in child support cases: (1) the health of the husband and his earning capacity; (2) the health of the wife and her earning capacity; (3) the entire sources of income of both parties; (4) the reasonable needs of the wife; (5) the reasonable needs of the child; (6) the necessary living expenses of the husband; (7) the estimated amount of income taxes the respective parties must pay on their incomes; (8) the fact that the wife has the free use of the home, furnishings and automobile, and (9) such other facts and circumstances bearing on the subject that might be shown by the evidence. *Dufour v. Dufour*, 631 So.2d 192, 194 (Miss. 1994).

¶38. It is apparent from the record that the chancellor took into consideration the incomes of Gary and Sandra. In this instance, the court determined that Sandra could be working as a registered nurse, and that her obligation to her children would not decrease just because she chose not to work full time. It is further reasonable for the non-custodial parent to pay child support to the custodial parent, even if it is a wife paying to her husband. The chancellor did not give any specific reasons for giving a $300 award of child support to the father. However, we must assume that the chancellor's reasons support his decision. Therefore, the court did not err in awarding child support to Gary.

**V. The court erred in not awarding attorney's fees and costs to the appellant.**

¶39. Sandra's position is that since the court should impose contempt on Gary, and that since he should be forced to pay arrearages in support payments, he should also be forced to pay Sandra's attorney's fees. Gary asserts that since Sandra could make $30,000 per year, she cannot say that she is unable to pay her attorney.

¶40. The award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards. *Dunn v. Dunn*, 609 So.2d 1277, 1286 (Miss. 1992). The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary. *Id.* Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal. *Id.*; *Trunzler v. Trunzler*, 431 So.2d 1115, 116 (Miss. 1983). Generally, unless the party requesting attorney fees

can establish the inability to pay, such fees should not be awarded. *Dunn*, 609 So.2d at 1287.

¶41. Sandra has failed to show that she is unable to pay her attorney fees. Moreover, since the court was not in error for failing to grant a mistrial, there is no basis for the her allegation that the chancellor was manifestly wrong in deciding not to award Sandra attorney's fees and costs. This claim too, is without merit.

## CONCLUSION

¶42. As to all points of error, we conclude that the chancellor committed no error and therefore affirm his decision.

¶43. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**