956 So.2d 244 (2006)
Heidi Davis Elmore DUKE, Appellant
v.
Robert E. ELMORE, Jr., Appellee.
No. 2005-CA-00328-COA.
Court of Appeals of Mississippi.
August 22, 2006.
Rehearing Denied February 13, 2007.
*246 Jak McGee Smith, Tupelo, attorney for appellant.
David Lee Brewer Christopher Hederi Neyland, Ridgeland, attorneys for appellee.
Before LEE, P.J., SOUTHWICK and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Robert E. Elmore, Jr. ("Robert") moved for modification of custody of his and Heidi Elmore Duke's ("Heidi") minor child. The chancellor granted modification of custody, awarding physical custody, as well as $106.40 per month in child support, to Robert. Aggrieved, Heidi appeals. Finding no error, we affirm.

FACTS
¶ 2. Robert and Heidi entered an agreement entitled "Child Custody, Support and Property Settlement Agreement" in 2001, which was eventually incorporated into the final judgment of divorce on May 31, 2001. In the agreement, Heidi and Robert agreed to give primary physical custody of their minor child, Matthew Swedlund Elmore ("Matthew") to Heidi.
¶ 3. On April 11, 2003, Robert filed a motion for modification of final judgment of divorce and child custody in the Chancery Court of Monroe County. The motion alleged that a material change in circumstances adversely affecting the welfare of Matthew warranted a change of physical custody, in the best interest of the child. The material change in circumstances alleged by Robert consisted of allegations that: (a) Heidi was using Matthew's welfare in an attempt to extort money from Robert; (b) Heidi refused to divulge her place of employment and the responsibilities pertaining to such employment; and (c) Heidi was moving Matthew from residence to residence too frequently.
¶ 4. Heidi filed a motion denying the allegations on June 23, 2003. A trial was held on the matter on August 12, 2003, and the chancellor rendered an opinion on the same day. The chancellor found that there had been a material change in circumstances since the entry of the final judgment of divorce, and that, after considering the Albright factors, it was in the best interest of Matthew to modify primary physical custody in favor of Robert. The parties maintained joint legal custody, *247 allowing Heidi visitation, and Robert was awarded $106.40 per month in child support.
¶ 5. On September 8, 2003, Heidi filed a motion for a new trial or judgment notwithstanding the verdict, which, after a hearing on December 20, 2004, was overruled by court order on February 3, 2005. Heidi filed a timely notice of appeal on February 11, 2005. Heidi asserts that the chancellor erred in modifying the final divorce decree by transferring custody of Matthew to Robert for the following reasons: (1) no material and substantial change in circumstances had occurred since entry of the original divorce decree granting custody to Heidi; (2) the chancellor used an incorrect standard in modifying custody when there existed no adverse effect on the minor child from any actions of Heidi since entry of the original divorce decree; (3) the chancellor used an incorrect legal standard by his application of the Albright factors as a substitute for the required finding of substantial and material circumstances adversely affecting the minor child of the parties; (4) the chancellor used an incorrect legal standard by his misapplication of "totality of circumstances" where there was no home environment that was detrimental to the safety of the minor child; and (5) the chancellor committed manifest error in his analysis of the facts that he considered in applying the Albright factors in his overemphasis of the "moral" factor where there was no showing that it had adversely affected the minor child.

STANDARD OF REVIEW
¶ 6. This Court will not reverse a chancellor's findings concerning modification of custody unless the chancellor was "manifestly wrong, clearly erroneous, or the proper legal standard was not applied." In re E.C.P., 918 So.2d 809, 822(¶ 58) (Miss.Ct.App.2005) (citing Hensarling v. Hensarling, 824 So.2d 583, 587(¶ 8) (Miss.2002)). The movant has the burden to prove by the preponderance of the evidence that a material change in circumstances has occurred. In re E.C.P., 918 So.2d at 822-23(¶ 58) (citing Riley v. Doerner, 677 So.2d 740, 743 (Miss.1996)). "In the ordinary modification proceeding, the non-custodial party must prove: (1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child's welfare; and (3) that the child's best interests mandate a change of custody." In re E.C.P., 918 So.2d at 823(¶ 58) (citing Bubac v. Boston, 600 So.2d 951, 955 (Miss.1992)).

ISSUES AND ANALYSIS
I. Whether the chancellor erred by finding that a material change in circumstances had occurred since the original divorce decree.
¶ 7. The totality of the circumstances should be considered when considering whether a material change in circumstances has occurred. In re E.C.P., 918 So.2d at 823(¶ 58) (citing Spain v. Holland, 483 So.2d 318, 320 (Miss.1986)). If, after examining the totality of the circumstances, a material change in circumstances is found to have occurred, the chancellor "must separately and affirmatively determine that this change is one which adversely affects the children." Id. (citation omitted). The polestar consideration is, of course, the best interest of the child. Id. at 823(¶ 58) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983)).
¶ 8. In the case sub judice, the chancellor began his bench opinion by citing several cases enunciating the above legal framework. He then continued by *248 noting that the polestar consideration, the best interest of the child, is analyzed through the Albright factors,[1] whether dealing with an initial custody decision or a custody modification. The chancellor proceeded to apply the Albright factors to the facts as established through testimony. In doing so, the chancellor noted several times that Heidi had moved four times within the two years since the divorce, maintained sporadic employment, and ended up moving into a two-bedroom home with a convicted felon. Heidi testified that she was not sure whether the man was divorced yet at the time, though he subsequently testified that he was, indeed, divorced at the time. Heidi shared a bedroom with the man while her mother shared the second bedroom with Matthew. This went on for approximately ten months until she married the man. In conclusion, the chancellor found that the Albright factors came out in favor of the father.
¶ 9. After discussing the Albright factors, the chancellor discussed whether there had been a material change in circumstances since the original custody decree, and whether, if such a change had occurred, it was adverse to the best interests of the child. The chancellor stated, after noting that he had considered the totality of the circumstances, the following:
Now, the question is, is there a substantial and material change in circumstances here? This child has been exposed to everything from a barn[2] to a felon. I'm not low rating horses. But I'm saying it's not the best place in the world to raise a little boy. It's not the best place in the world to have a stepfather who is a convicted felon. And I know you don't hold this against people for life. At the same time, there is a little child that doesn't even know he is one, by the admission of his own grandmother and his mother that they probably should not tell him that.
Now, I'm going to be frank with you. I was not impressed with the testimony of Mr. Duke. I couldn't find him looking me in the eye. My grandfather used to tell me when a man looks you in the eye, you can tell whether or not what he is. Maybe that's not the sole criteria on the custody of children, but it's one of the measuring sticks that I use as a judge. I didn't like his countenance. I don't think it's in the best interests of a child for him to grow up under his leadership as a dad. I find that as one of the circumstances that makes this a substantial change in circumstances relative to this child. I, secondly, find that his mother, in living with this kind of man for ten months in the presence of this child before she ever married him is likewise a substantial and material *249 change in circumstances. I find that her constant lack of employment, all of those are factors as well as those I have already enumerated in this opinion that give rise to the fact that I contend and so find that there has been a substantial and material change in circumstances.
¶ 10. Heidi argues that the points emphasized by the chancellor as lending to a substantial and material change in circumstances were not supported by the evidence. She addresses, in her brief, several of the points individually. She argues that the "barn" was actually a nice apartment; that Mark Duke ("Duke"), the convicted felon with whom she lived and shared a bedroom for ten months before marrying, never did drugs and did not have a violent nature; that she had no duty to inform her child of Duke's status as convicted felon; that Duke's failure to look the chancellor in the eye did not indicate that Duke was not telling the truth when he testified; that her cohabitation alone was not sufficient to warrant a change in custody; that, citing Cheek v. Ricker, 431 So.2d 1139, 1144 (Miss.1983), a change of residence was not a material change in circumstances justifying a reconsideration of custody; and that she was not "constantly unemployed," but only unemployed for the first three months after the divorce, after which she had a job for eight months until moving to Olive Branch, Mississippi in June of 2002, when she began going to school full-time.[3]
¶ 11. Viewing the totality of the circumstances, and giving the findings of the chancellor due deference, we cannot say that he erred by finding that a substantial and material change in circumstances had occurred since the time of the original custody decree. We therefore affirm as to this issue.
II. Whether the chancellor erred by using an incorrect standard in modifying custody when there existed no adverse effect on the minor child from any actions of Heidi since entry of the original divorce decree.
¶ 12. After finding that, viewing the totality of the circumstances, there was a substantial and material change in circumstances, the chancellor continued by analyzing whether such change adversely affected Matthew's welfare, followed by reiteration of his findings concerning Matthew's best interests. He stated:
We can't tell how that does here. I can't read into a crystal ball and say whether it does or not. We don't have that little boy here before us today. He's too young to testify. But what I'm saying is here, when you take the totality of the circumstances . . . that I've looked at here today and analyzed before you, I find that there has been a change that does affect the child's welfare. I find that the environment is not suitable for him to remain in it under the circumstances.
And thirdly, the most important part is that the child's best interests mandate a change of custody. . . . The Court finds that it would be in the best interests of this child that the custody be changed from the mother to the father, and the Court so holds. . . . [T]he case of Riley v. Doerner, 677 So.2d 740 . . . states this, that when the environment provided by the custodial parent is found to be adverse to the child's best interest and that the circumstances of the non-custodial parent have changed such that he or she is able to provide an environment *250 more suitable than that of the custodial parent, the chancellor may modify custody accordingly.
¶ 13. Heidi argues that "[a]lthough the Chancellor stated that he found that there had been a change that does affect this child's welfare, the Court failed to cite one fact to show how the custodial parent's conduct had adversely affected the child."
¶ 14. In Riley, our supreme court stated that "we further hold that when the environment provided by the custodial parent is found to be adverse to the child's best interest, and that the circumstances of the non-custodial parent have changed such that he or she is able to provide an environment more suitable than that of the custodial parent, the chancellor may modify custody accordingly." Riley, 677 So.2d at 744. The court went on to state:
We further hold that where a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment. Evidence that the home of the custodial parent is the site of dangerous and illegal behavior, such as drug use, may be sufficient to justify a modification of custody, even without a specific finding that such environment has adversely affected the child's welfare. A child's resilience and ability to cope with difficult circumstances should not serve to shackle the child to an unhealthy home, especially when a healthier one beckons.
¶ 15. The chancellor clearly found that, considering the totality of the circumstances, Matthew's welfare was adversely affected. While there was no evidence of dangerous or illegal behavior, as there was in Riley, the chancellor nevertheless found that, considering the totality of the circumstances, Heidi's cohabitation with a convicted felon, when combined with her sporadic employment and frequent moves, constituted an environment adverse to Matthew's welfare. We cannot find that the chancellor was manifestly wrong, in clear error, or that he applied an improper legal standard with regard to this issue. Accordingly, it is without merit.
III. Whether the chancellor used an incorrect legal standard by his application of the Albright factors as a substitute for the required finding of substantial and material circumstances adversely affecting the minor child of the parties.
¶ 16. Citing Sturgis v. Sturgis, 792 So.2d 1020, 1026(¶ 28) (Miss.Ct.App.2001), Heidi asserts that the chancellor erred because with no identification of the material change in circumstance nor statement of what conduct on the part of Heidi adversely affected the child, the lower court jumped into a weighing of the Albright factors. As discussed above, however, the chancellor did consider the totality of the circumstances and find that a substantial and material change in circumstances had occurred. It is obvious from the chancellor's bench opinion that he discussed the Albright factors first merely as a means of outlining the totality of the circumstances surrounding the parties. Accordingly, this issue is without merit.
IV. Whether the chancellor used an incorrect legal standard by his misapplication of "totality of circumstances" where there was no home environment that was detrimental to the safety of the minor child.
¶ 17. Heidi argues, citing Riley, 677 So.2d at 744, that there must be evidence *251 that the home of the custodial parent is the site of dangerous and illegal behavior, such as drug use, in order to find that the custody can be changed. She argues that, as there was no evidence that any dangerous or illegal behavior was occurring at her home, the chancellor erred in finding that the environment adversely affected Matthew.
¶ 18. We disagree. Riley does not mandate that dangerous or illegal behavior be present in the home in order to allow a chancellor to find that the environment is adverse to the best interests of the child. Riley simply stated that such evidence may be sufficient to justify a modification of custody. Riley, 677 So.2d at 744. The court in Riley simply made mention of that factual scenario because those were the circumstances in that case. The actual holding of Riley was that "where a child living in a custodial environment clearly adverse to the child's best interest, somehow appears to remain unscarred by his or her surroundings, the chancellor is not precluded from removing the child for placement in a healthier environment . . . even without a specific finding that such environment has adversely affected the child's welfare." Id. A chancellor does not have to wait until a child's safety is in question before removing him from an obviously detrimental environment. Heidi's argument with regard to this issue is clearly without merit.
V. Whether the chancellor committed manifest error in his analysis of the facts that he considered in applying the Albright factors in his overemphasis of the "moral" factor where there was no showing that it had adversely affected the minor child.
¶ 19. Heidi argues that the chancellor erred by overemphasizing the moral issues of Duke's felony conviction and of Heidi and Duke cohabitating for ten months prior to their marriage. We disagree. As clearly shown from the discussion above, a number of factors contributed to the chancellor's decision. While the ten-month cohabitation and Duke's status as a convicted felon certainly contributed to the chancellor's decision, the chancellor also emphasized Heidi's lack of steady employment and frequent moves, which starkly contrasted from Robert's consistent employment and residency. The chancellor was not, therefore, manifestly wrong or in clear error, nor did he apply an improper legal standard. Accordingly, we will not substitute our judgment for that of the chancellor, and we affirm as to this issue.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] The factors with which we analyze the best interests of the child, as established by Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983), are: (1) health and sex of the child; (2) which parent had continuity of care prior to the separation; (3) which parent has the best parenting skills, as well as the willingness and capacity to provide primary child care; (4) employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties between parent and child; (7) moral fitness of the parents; (8) home, school and community record of the child; (9) preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.
[2] The chancellor's reference to a barn stemmed from testimony that Heidi and Matthew had lived in a 2500 square-foot apartment in a barn of one of her employers (in Germantown, Tennessee), though testimony also revealed that the apartment was located in a good community and was "very nice."
[3] When Heidi and Duke married on April 2, 2003, she began working as a professional horse rider and trainer in Olive Branch, Mississippi.