872 So.2d 679 (2003)
Lytricia LAMBERT, Appellant,
v.
Travis LAMBERT, Appellee.
No. 2001-CA-01739-COA.
Court of Appeals of Mississippi.
October 28, 2003.
Rehearing Denied February 17, 2004.
Certiorari Denied May 13, 2004.
*680 David L. Calder, University, attorney for appellant.
Joe Dale Walker, Monticello, attorney for appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
KING, P.J., for the Court.
¶ 1. Lytricia Simmons Lambert and Travis Lambert agreed to a divorce based on irreconcilable differences and the Chancery Court of Lawrence County entered its decree on November 4, 2000, incorporating the terms agreed upon by the parties. The parties agreed that the mother would have primary physical custody of their minor child, William Travis Lambert, with the father given certain visitation rights.
¶ 2. On February 1, 2001, less than three months after the entry of the divorce, Travis filed a motion for modification of the custody, support, and visitation alleging a "material change in circumstances" because Lytricia "just this week moved from Hattiesburg, Mississippi to Batesville, Mississippi... making it impossible for the petitioner to have visitation with his minor child as set forth in the Final Decree of *681 Divorce." After conducting a hearing, the chancery court granted Travis' motion and changed primary custody to him. Lytricia appeals from that judgment by the Lawrence County Chancery Court.
¶ 3. On appeal, Lytricia raises the following assignment of errors:
1. Whether Appellee Travis Lambert presented sufficient credible evidence to support his allegation that there had been a substantial change in the circumstances of the parties that was expected to continue and to adversely affect the best interest of the minor child, so as to change the terms and conditions of the custody agreement that had previously been established by the trial court was justified.
2. Whether the chancellor erred and/or abused his discretion by finding that there had been a material change in circumstances adverse to the best interest of the minor child, so that a modification of the original divorce and custody decree was warranted because Appellant Lytricia Simmons Lambert relocated her residence.
3. Whether the chancellor's findings of fact were supported by credible evidence, or whether he improperly applied the law in his decision to modify custody.
4. Whether the chancellor erred and/or abused his discretion by proceeding to an "Albright analysis" when there had been no credible evidence of a material change in circumstances that adversely affected the best interest of the minor child.
5. Whether the trial court erred and/or abused its discretion in shifting primary physical custody of the minor child to the father because the mother relocated to a different part of the state.
6. Whether the trial court erred and/or abused its discretion by punishing the mother for her relocation of her residence to a different part of the state by changing primary physical custody of the minor child to the father, and placing the primary burden of traveling on the mother for the purposes of visitation.
¶ 4. Finding that the chancellor committed error in changing custody, this Court reverses and renders the decision of the chancery court.

FACTS
¶ 5. At a hearing on July 24, 2000, Lytricia Simmons Lambert and Travis Lambert appeared before the chancellor and agreed to an irreconcilable differences divorce including an agreement as to property, child custody, support and visitation. They agreed to joint legal custody of their child, William Travis Lambert, born on December 26, 1992, with Lytricia having primary physical custody during the school year, subject to Travis' having defined visitation. Travis was allowed a mid-week visitation period each Wednesday from the time the child got out of school until 8:00 p.m. and overnight visitation two weekends per month, plus extended visitation during the summer months.
¶ 6. At the time of the July hearing, as evidenced by the discussions concerning visitation, Lytricia was in the process of moving from the marital home near Monticello to Hattiesburg. Unable to find fulltime employment in Hattiesburg, Lytricia and her son moved to her parents' home in Pope, Mississippi, in late January 2001. William was enrolled in the second grade at Pope Junior High School in the South Panola School District.
¶ 7. After working part-time with her father and for Cross Mark, Lytricia found full-time employment as a dispatcher with the Batesville Police Department in June 2001. She worked two days on and two *682 days off, from 6:00 a.m. to 6:00 p.m., earning approximately $1,500 per month.
¶ 8. As part of the divorce agreement, Travis retained possession of the marital domicile in Jayess, Mississippi where he still lives. His mother, brother and sisterin-law live nearby. Travis had worked for Georgia-Pacific in Monticello as a life truck operator in the shipping department for over seven years at the time of the modification hearing. He works fourteen days on and fourteen days off, working from either 7:00 a.m. to 7:00 p.m. or 7:00 p.m. to 7:00 a.m.
¶ 9. For reasons which are not clear, after the July 2000 hearing, the chancellor did not sign the order granting the parties' divorce until October 23, 2000, and the order was not entered by the chancery clerk until November 4, 2000.
¶ 10. In his motion for modification of custody, filed less than three months after the divorce decree, Travis alleged a "material change in circumstances" because Lytricia "just this week moved from Hattiesburg, Mississippi to Batesville, Mississippi... making it impossible for the petitioner to have visitation with his minor child as set forth in the Final Decree of Divorce." No other grounds were alleged for the modification.
¶ 11. At the June 12, 2001 hearing on his motion, Travis testified and presented four other witnesses: Lytricia Lambert as an adverse witness; Paul Davey, a professional counselor who evaluated William; Karen Lambert, Travis' sister-in-law; and Wallene Lambert, Travis' mother. After Travis rested, counsel for Lytricia moved to dismiss the motion based on the failure of Travis to prove his case. The chancellor inexplicably denied the motion because Lytricia had filed a motion seeking modification of the weekday visitation. The chancellor stated that "there's no doubt that a material change in circumstances adversely affecting the child has been met in these circumstances, so therefore the motion will be overruled." The chancellor gave no further explanation.
¶ 12. After Lytricia presented her witnesses, the chancellor went through the Albright factors and awarded primary physical custody of the minor child to Travis during the school year with Lytricia having custody during the summer months. The noncustodial parent would also have two weekends per month visitation and additional visitation as provided for holidays. Significantly, the court also allowed Lytricia to exercise a mid-week visit from the time school is out until 8:00 p.m., but only if she were willing to drive the full distance back and forth. Under the previous arrangement, Lytricia drove William to Jackson so that Travis could have his mid-week visitation.
¶ 13. Near the end of the hearing, counsel for Lytricia moved the court "for findings of fact as to what are the substantial and material change in circumstance and what adverse affects on the child." The chancellor stated:
I think the Court has done it. But just so we'll make sure. The adverse affect on the child is the fact that the child is a divorce decree that wasn't finalized until November. In February the visitation became a problem because the mother moved. And the therapist has or the wife's therapist, as well as the wife, testified that the child has anxiety and that it is not good for the child. So that's got to be an adverse effect on the child, the fact that he moved and the prior decree could not be fully enforced as it was at the time of the divorce.

DISCUSSION

Travis Lambert's Failure to Cite Legal Support
¶ 14. In response to the brief submitted by Lytricia Lambert, Travis *683 Lambert submitted a brief consisting of eight pages which contained no specific reference to any legal authorities in support of his arguments. It is well established that appellate courts in Mississippi will not review any issues on appeal if the party fails to cite relevant authority in support of his or her arguments. See, e.g., Blue v. State, 825 So.2d 709, 712(¶ 10) (Miss.2002); Hankins, v. Hankins, 729 So.2d 1283, 1286(¶ 11) (Miss.1999); Grey v. Grey, 638 So.2d 488, 491 (Miss.1994). In light of this authority, the Court is not required to address the arguments raised by Travis Lambert in his brief because they are not supported by any legal authority or appropriate citations to the record.
¶ 15. This rule has also been applied in the context of a custody and support decision where the appellee failed to file a substantive brief in opposition to the issues raised by the appellant. In Roberts v. Brown, 805 So.2d 649 (Miss.Ct.App.2002), the father/appellant petitioned the court to terminate his support obligations based on the deterioration or non-existence of the parent/child relationship. The court denied his request to have his child support obligations terminated. On appeal, the father argued that the decision of the chancellor was manifestly wrong and that he should not be required to continue child support since the child had no contact with him and the mother/appellee had not encouraged the child to maintain contact with the father. See Id. at 652(¶ 13). The appellee/ mother did not file an appellee's brief. The Court held that the father was entitled to terminate his child support obligations, stating:
The standard of review in child support cases is that a chancellor's ruling will remain undisturbed unless there is a showing of manifest error. Westbrook v. Oglesbee, 606 So.2d 1142, 1146 (Miss. 1992). However, when an appellee does not file a brief, this deference is reduced. "We treat the failure to file a brief as a confession of error unless from the face of the appeal there is manifestly none." In the Interest of R.T. 520 So.2d 136, 138 (Miss.1988).
Id. at 652 (¶ 12). The Court reversed and rendered the decision of the chancellor and ordered the father's child support obligations terminated.
¶ 16. Despite a failure to file a reply brief, automatic reversal is not required and the Court is under an obligation to review the record where child custody is at issue. Mosley v. Atterberry, 819 So.2d 1268, 1272 (¶ 17) (Miss.2002); Muhammad v. Muhammad, 622 So.2d 1239, 1242-43 (Miss.1993).
¶ 17. Applying the holding in Roberts, we find that the failure to cite any legal authority by Travis Lambert in support of his argument that the ruling of the chancellor should be sustained amounts to a confession that the chancellor committed error. Our review of the record confirms that the chancellor was manifestly in error. In this case, the error was more than apparent, and Travis Lambert failed to support his argument simply because there is no legal support for his argument or the decision of the chancellor.

Modification of Child Custody
¶ 18. Our standard of review of the decision of a chancellor is limited and we will reverse only where the decision is manifestly wrong or clearly erroneous or the chancellor has applied an erroneous legal standard. Creel v. Cornacchione, 831 So.2d 1179, 1183 (¶ 14) (Miss.Ct.App.2002). In considering whether a change in custody is warranted, the Court looks to the following:
First, a party must show that since entry of the judgment or decree sought to be modified, there has been a material *684 change in circumstances which adversely affects the welfare of the child. Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). Second, the party must also show that the best interest of the child requires a change in custody. Id. We further note that not every change in circumstances is so adverse that a modification of custody is warranted; however, the chancellor must consider the circumstances of each case in light of the totality of the circumstances. Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993). However, "[i]n all child custody cases, the polestar consideration is the best interest of the child." Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994).
Creel, 831 So.2d at 1183 (¶ 15).
¶ 19. It is foreseeable, indeed expected, that as a consequence of divorce a child will experience changes in his or her circumstances and experience anxiety as a result of the disruption of the family unit. Divorce has consequences which are often adverse, particularly for younger children. This is not to say that a chancellor cannot change custody, if the circumstances warrant, but to do so, within a short time and without sufficient justification is perhaps one of the most egregious errors that a chancellor can commit. In seeking to placate one parent, the chancellor exacerbates the trauma to the one person least deserving to be subjected to the caprice and whim of the chancery courtthe child. In this instance, the best interest of the child was completely ignored, as was prior case law from this Court and the Mississippi Supreme Court.
¶ 20. In order for there to be a modification in custody, there must have been an initial determination of custody. In this case, the parties had agreed to the terms of custody as a part of their joint petition for an irreconcilable differences divorce.
¶ 21. To permit a change in custody, there must first be a factual determination based on substantial evidence, presented by the petitioning party, that there has been a substantial and material change in circumstances since the divorce was granted adversely affecting the child and which circumstances are anticipated to be permanent or continuing such that they would warrant a change in custody. These changed circumstances must be such that they could not be anticipated at the time of the initial determination of custody and of such magnitude as to justify the drastic measure of change in custody.
¶ 22. "While numerous factors may go into the initial consideration of a custody award, see, e.g., Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change." Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991) (citing Ballard v. Ballard, 434 So.2d 1357, 1360 (Miss.1983)). As stated in Ballard, 434 So.2d at 1360, a change in custody is a "jolting, traumatic experience. It is only that behavior of a parent which clearly posits or causes danger to the mental and emotional well-being of a child (whether such behavior is immoral or not), which is sufficient basis to seriously consider the drastic legal action of changing custody."
¶ 23. In the present case, the mother moved and the father was inconvenienced by the move. In changing custody, the chancellor did nothing but cause a further inconvenience to the mother, certainly not adequate grounds for modification. This Court in Creel v. Cornacchione, 831 So.2d at (¶ 16), rejected the notion that allegations of denial of visitation were sufficient grounds for modification of custody. See also Spain v. Holland, 483 So.2d 318, 321 (Miss.1986) (move to another state which *685 effectively curtained non-custodial parent's visitation rights "legally irrelevant to the matter of permanent custody"). The proof in this case did not rise to that level. The most that was offered was that the father was having difficulty with a portion of the visitation because of the mother's move. Certainly, the best interest of the child was not served by this decision.
¶ 24. The appellate courts have repeatedly held that the mere moving of one party or the other is insufficient grounds for modification of child custody. Cooley v. Cooley, 574 So.2d 694, 699 (Miss.1991) (frequent moves within a short period of time, including move to Japan, insufficient to warrant change in custody) (overruled on other grounds); Spain v. Holland, 483 So.2d 318, 321 (Miss.1986) (move to England does not require change in custody); Pearson v. Pearson, 458 So.2d 711, 713 (Miss.1984) (move to Hawaii no per se basis for interfering in custody); Brocato v. Walker, 220 So.2d 340, 344 (Miss.1969) (600 mile move to San Antonio, Texas, not a material change in circumstances). See also Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990) (move to Alaska, along with split custody and poor relationship with child were "unusual circumstances" warranting change in custody). As stated in Spain v. Holland, 483 So.2d 318 at 321, "[w]e close our eyes to the real world if we ignore that ours is a mobile society. Opportunity and economic necessity transport perfectly responsible adults many miles from their homes."
¶ 25. Upon review of the record in this case, we find no legally sufficient basis for finding a material change in circumstances to justify the change in custody. The proponent of the motion to modify totally failed to show any change in circumstances. It was his burden in this case. When asked to explain why he filed the motion to modify, Travis stated:
Because of Lytricia moving from place to place. Moving William from school to school. It is not good for him to go through those changes. Like what I you know, like I have a good secure home, good secure job. Lytricia hasn't had a full time job as I've known of since the divorce. And she was going to try to keep me from being able to see William on the weekdays and stop me getting to see him some of that. And I don't think that's good for him. Change my weekends. And the way that had worked out was when I was off. Basically those are the main reasons why.
¶ 26. In particular, Travis failed to show that the mental and emotional well-being of the child was in any danger as a result of living with the custodial parent. None of the witnesses offered by Travis in the hearing in this matter testified to any material change in circumstances. In fact, their testimony, including Paul Davey, a professional counselor, was that William was happy, healthy and well adjusted. The chancellor denied the motion to dismiss at the conclusion of Travis' presentation of his case, stating that "[t]he Court, of course, is cognizant of the fact that the defendant herself filed saying that there has been a material change in circumstances adversely affecting the child and wanted the visitation changed. And she testified from the stand that it would be good for the child to have to have the weekday visitation which would automatically cause a change in what had been agreed to." The non-custodial parent's visitation rights are "legally irrelevant to the matter of permanent custody." Spain, 483 So.2d 318 at 321.
¶ 27. As previously noted, Lytricia moved the court for specific findings of fact which support a substantial and material change in circumstances and to determine *686 what were the adverse effects on the child. The chancellor stated:
I think the Court has done it. But just so we'll make sure. The adverse affect on the child is the fact that the child is a divorce decree that wasn't finalized until November. In February the visitation became a problem because the mother moved. And the therapist has or the wife's therapist, as well as the wife, testified that the child has anxiety and that it is not good for the child. So that's got to be an adverse effect on the child, the fact that he moved and the prior decree could not be fully enforced as it was at the time of the divorce.
May Jane Montgomery, a mental health therapist, testified for Lytricia at the hearing, as follows:
Basically my opinion is that [William has] been through a lot and it's going to affect him adversely. He's not going through normal psychological childhood development. He's kind of doing a few steps backwards because of this custody and visitation issue. I just hope that it's over soon, however it ends, and that William can get past it. That's what he want most and that he can get on with his life and excel and socialize and learn and be your typical little eight year old boy instead of such a heavy weight on him.
Montgomery specifically testified that William's problems of anxiety were a result of the litigation initiated by the father and not a result of the home environment and that she found nothing adverse to him as a result of his living with his mother. Thus, the record directly contradicts the chancellor's findings and supports the conclusion that his finding was clearly erroneous and not supported by any evidence.
¶ 28. A custodial parent's relocation without more is insufficient grounds for modification of child custody. Spain, 483 So.2d at 321. There was simply no evidence presented of any change in circumstances affecting the minor that could have supported the modification of the original decree and the transfer of primary custody to the father. We reverse and render the decision of the chancellor and return custody of the minor child to the mother.
¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF LAWRENCE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.