958 So.2d 844 (2007)
Nancy Jill HOLMES, Appellant
v.
Mike Manning HOLMES, Appellee.
No. 2005-CA-01711-COA.
Court of Appeals of Mississippi.
June 26, 2007.
*845 Renee M. Porter, attorney for appellant.
Jose Benjamin Simo, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. The former wife appeals from the decision of a chancellor to modify child custody. She alleges that the lower court used an incorrect standard of law in reaching a decision to award custody of the son, a minor, to his father. Finding no error, we affirm.

FACTS
¶ 2. Nancy Jill Holmes and Mike Manning Holmes were married on February 4, 1984. Two children were born during the marriage, C.M.H. on May 9, 1990, and J.L.H. on February 22, 1995. Jill is a school teacher in McComb, Mississippi, and Mike is self-employed as a contractor. The couple separated on May 3, 2003. Mike filed for divorce on June 2, 2003, alleging grounds of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences.
¶ 3. A temporary order was entered on August 8, 2003, in which Mike and Jill agreed to share legal custody of the two minor children, with Jill having primary physical custody. The order provided, *846 among other things, a visitation schedule for the parties and directed both parents to obtain a psychological evaluation within forty-five days from the date of the order. On August 26, 2003, Mike filed a motion to amend the temporary order, asking that the visitation schedule set forth in the order be amended and that the parties' rights with respect to visitation be made more specific. An order was entered September 17, 2003, amending the original temporary order by changing the visitation schedule and prohibiting both parties from interfering with the other's pick-up and return of the children.
¶ 4. On March 1, 2004, the chancery court entered a judgment of divorce for Mike on the grounds of habitual cruel and inhuman treatment and stated that both parents would share legal custody of the minor children, with Jill having primary physical custody. After the divorce, Mike and Jill continued to have a relationship, including a sexual relationship. Two years later, on April 20, 2005, Jill filed a complaint for modification of judgment seeking to have Mike's visitation terminated or, in the alternative, asking the court to award limited supervised visitation. Jill alleged that there had been a material change in circumstances which adversely affected the minor children since the original judgment was entered and that it was in the best interest of the children for Mike's visitation to be terminated.
¶ 5. In her complaint, Jill asserted that Mike abused alcohol and illegal drugs, had tested positive for marijuana with the Walthall County Department of Human Services, that both of the children's grades had dropped since spending more time with their father, that the children did not like Mike's new girlfriend and had found the girlfriend's underwear in Mike's home, and that Mike had driven the children while intoxicated, which resulted in Mike being stopped by the police.
¶ 6. On June 3, 2005, Chancellor Debra K. Halford, chancellor for the Fourth Chancery Court District, recused herself from the case and transferred the cause to the Pike County Court, and Pike County Court Judge John Price was appointed as the presiding judge.
¶ 7. Mike filed an answer and defenses to Jill's complaint on June 3, 2005, and asserted a counter-claim. Mike asked that a guardian ad litem (GAL) be appointed for the children and asked the court to restrain Jill from harassing him. Mike also alleged that a material change in circumstances had occurred which adversely affected the children, in that Jill had displayed violent behavior toward the children, especially the minor son, C.M.H. He asked the court to order Jill to undergo further psychiatric evaluation. C.M.H., by this time a fifteen-year old, filed an election stating that he preferred to live with his father and that he and his mother did not get along.
¶ 8. An order was entered on June 15, 2004, appointing the Honorable John Price, judge of and for the County Court of Pike County, as special judge to preside over the case. On July 25, 2005, the case was transferred from the Pike County Court to the Chancery Court of Pike County with Judge Price presiding.
¶ 9. After conducting a hearing in which both sides presented witnesses and evidence, the court entered an order modifying the original child custody arrangement on August 2, 2005. The court changed physical custody of C.M.H. from Jill to Mike. The minor daughter, J.L.H., remained in the primary physical custody of Jill. A new visitation schedule was also arranged, ensuring that the children would be together on the weekends and alternate between parents. The court stated that it *847 would revisit the situation in a few months to assess the modification.
¶ 10. On December 19, 2005, the custody arrangement was reviewed and the court upheld its determination. Jill then filed an appeal from the chancery court's ruling.

STANDARD OF REVIEW
¶ 11. This Court adheres to a limited and well-settled standard of review in child custody cases. M.C.M.J. v. C.E.J., 715 So.2d 774, 776(¶ 10) (Miss.1998). In order to reverse, the chancellor's custody decision must have applied an incorrect legal standard or have been manifestly wrong or clearly erroneous. Id. We "will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996).

LAW AND ANALYSIS
I. WHETHER THE COURT ERRED BY APPLYING AN INCORRECT LEGAL STANDARD FOR CHILD CUSTODY MODIFICATION.
¶ 12. Jill argues that the trial court erred by modifying the existing child custody order without making a specific finding of a material change in circumstances that adversely affected C.M.H. and that the change would be in his best interest.
¶ 13. We have consistently held that in child custody cases, even in modification cases, the polestar consideration is the best interest of the child. Hollon v. Hollon, 784 So.2d 943, 946(¶ 12) (Miss. 2001). In arriving at a custody arrangement that is in the child's best interest, the chancellor should apply the factors from Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). However, the Albright factors need not be reviewed exhaustively in custody modification proceedings. Savell v. Morrison, 929 So.2d 414, 417(¶ 8) (Miss. Ct.App.2006).
¶ 14. When determining whether to modify a previous child custody order, the chancellor must "determine if there has been a material change in circumstances since the award of initial custody which has adversely affected the child and which, in the best interest of the child, requires a change in custody." Sanford v. Arinder, 800 So.2d 1267, 1271(15) (Miss.Ct. App.2001). The material change in circumstances must occur subsequent to the original decree that adversely affects the welfare of the child. Lambert v. Lambert, 872 So.2d 679, 684 (¶ 21) (Miss.Ct.App. 2003). A material change in circumstances must be such that it could not have been anticipated at the time of the original determination of custody and of "such magnitude as to justify that drastic measure of change in custody." Id. "While numerous factors may go into the initial consideration of a custody award, only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change." Id. at 684(¶ 22). Further, this Court considers all testimony regarding factors of the child's best interest. E.J.M. v. A.J.M., 846 So.2d 289, 293(¶ 12) (Miss.Ct.App.2003).
¶ 15. Jill argues that the court made its finding based solely on C.M.H.'s election to live with Mike. Jill asserts that C.M.H.'s election merely states that he and his mother do not get along and that he is fifteen years old. Alone, these statements are not enough to constitute a material change in circumstances that adversely affect the child's best interests. Franklin v. Kroush, 622 So.2d 1256, 1257 (Miss. 1993) (holding that friction between a child *848 and custodial parent is not a material change warranting a change in custody). Section 93-11-65 of the Mississippi Code Annotated (Rev.2006) permits a child who has reached the age of twelve years to express a preference as to which parent the child desires to live with when custody disputes are presented to the chancery courts of our state for resolution. This election of preference is not outcome determinative of the issue. Rather, the chancellor must consider the child's preference when assessing what is in the best interest of the child. Best v. Hinton, 838 So.2d 306, 308(¶ 5) (Miss.Ct.App.2002) (citing Westbrook v. Oglesbee, 606 So.2d 1142, 1147 (Miss.1992)).
¶ 16. We disagree with Jill's assessment of the lower court's findings. While the Court did cite the election as a factor in its determination of the modification, the lower court also considered the GAL report and various testimony from both parties.
¶ 17. The trial court specifically referenced Jill's mental health assessment by a licensed psychiatrist and the report from the GAL as heavily influencing his decision. Dr. Patricia Brawley, the psychologist assigned to this case, testified that she became involved with the case through a court order in which the judge ordered Mike and Jill to undergo counseling for the purpose of improving their communication. She stated that she felt the communication therapy was a failure due to Jill's inability to stay on topic. She also diagnosed Jill with borderline personality disorder and was concerned about Jill's high potential for violence. Dr. Brawley stated that, given the right situation, Jill could be a danger to herself or others. For instance, Jill made threats against Mike after their divorce, acted violently towards her son, and had been involved in violent altercations with Mike during their marriage. Dr. Brawley agreed with the GAL's report that Jill's conduct and relationship with C.M.H. were "suffocating."
¶ 18. Although we usually determine that a material change in circumstances has occurred based on evidence that has a present adverse effect on the child, this Court has found that "in limited circumstances[,] adverse effects exist if it is shown that it is reasonably foreseeable that the child will suffer adverse effects because the child's present custodial environment is clearly detrimental to his or her well being." Savell v. Morrison, 929 So.2d 414, 418-19(¶ 13) (Miss.Ct.App.2006) (citing Johnson v. Gray, 859 So.2d 1006(¶ 39) (Miss.2003)). Likewise, the child does not have to suffer actual injury before a court can find an adverse effect. Id.
¶ 19. Joe Fernald, the GAL, testified that the testimony presented during the hearing by both parties made him more sure of his initial recommendations, among which was that C.M.H. should live with his father. In his report, Fernald found that C.M.H. and his sister were "at serious risk for emotional damage that will have far reaching effect [sic]." Fernald stated that despite his prohibition to the parties from speaking about his report, Jill nonetheless spoke with C.M.H. about it. From his interview with C.M.H., Jill, and C.M.H.'s sister, Fernald concluded that Jill had a very controlling relationship with C.M.H. and that Jill accentuated only negative aspects regarding her son. Because the current living environment was stressful and emotionally destructive for C.M.H., Fernald recommended that Mike be given physical custody of C.M.H. Regarding the GAL report, we note that the GAL's recommendations are not binding on the chancellor, but they must be considered. Ethridge v. Ethridge, 926 So.2d 264, 267(¶ 13) (Miss.Ct.App.2006).
*849 ¶ 20. Thomas Gonsalves, who provided mental health counseling to C.M.H., also testified that C.M.H. suffered from an extremely detrimental relationship with his mother. When C.M.H. would return from visiting his father, Jill would relentlessly quiz him about who was at Mike's house, what occurred and also question him about Mike's new girlfriend. Gonsalves stated that C.M.H. relayed an incident where Jill slapped the boy because he refused to answer questions about his latest visit with his father. Gonsalves diagnosed C.M.H. with acute adjustment disorder with depression and anxiety primarily caused by the difficulty in his relationship with his mother. In his opinion, it was in C.M.H.'s best interest to live with his father.
¶ 21. Jill states that C.M.H. did not articulate any reasonable, compelling, or sound reasons in his election for why he thought the change of custody was in his best interest. C.M.H.'s testimony contradicts Jill's assertion. He stated that on one occasion when he and Jill were engaged in an argument that she pushed him out of the door and told him to go live with his father. Jill had also slapped C.M.H. in the face, causing his glasses to fall off. On more than one occasion, Jill took C.M.H. and his sister in the car and followed Mike in the middle of the night to spy on him. This is supported by Dr. Gonsalves, who conducted a mental health evaluation of C.M.H. Dr. Gonsalves noted in his report that C.M.H. complained of Jill taking the children at all hours of the night to spy on Mike and determine his whereabouts. Dr. Gonsalves also noted that because of the constant bickering and negative attitude displayed by Jill toward his father, C.M.H. exhibited "fatalistic" and sullen behavior.
¶ 22. Jill also claims that the lower court did not address the separation of the children or provide a justification for such a separation. Jill is correct that Mississippi law favors keeping siblings intact in the same household. Sellers v. Sellers, 638 So.2d 481, 484 (Miss.1994) ("in the absence of some unusual and compelling circumstance dictating otherwise, it is not in the best interest of children to be separated."). However, in its order, the lower court noted that it considered any detrimental effect the division would have had on the two siblings. And, as we discussed above, the trial court did provide sufficient findings that it was in C.M.H.'s best interest that he be removed from his mother's primary physical custody.
¶ 23. We have consistently expressed that the chancellor, "by his presence in the courtroom, was best equipped to listen to witnesses, observe their demeanor, and determine the credibility of those witnesses and what weight ought to be ascribed to the evidence given by those witnesses." Rogers v. Morin, 791 So.2d 815, 826(¶ 39) (Miss.2001) (quoting Carter v. Carter, 735 So.2d 1109, 1114(¶ 19) (Miss.Ct.App.1999)). As substantial evidence supported the chancellor's decision and the decision was not manifestly erroneous, we do not find error. Accordingly, we affirm the lower court's decision to modify the custody decree.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF PIKE COUNTY MODIFYING PHYSICAL CUSTODY OF MINOR SON FROM THE MOTHER TO THE FATHER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.