ISHEE,
J., for the Court.
¶ 1. Thomas G. Bittick and Stacy Elizabeth Bittick were married in 1997. They had one child together. Thomas and Stacy received an irreconcilable differences divorce in August 2004. The decree granting their divorce contained a property settlement agreement and custody agreement. The custody agreement granted joint legal custody to both Thomas and Stacy, but primary physical custody to Stacy. Three months after the divorce, Stacy filed a complaint for contempt against Thomas and moved to modify the *1060 custody agreement. Thomas counterclaimed for contempt against Stacy and also moved for a modification of the custody agreement. The case was heard in Lauderdale County during a trial lasting three days in August 2006 and one additional day in October 2006.
¶ 2. The chancellor found that a modification of the primary custody arrangement was not necessary, but he did modify certain aspects of the visitation schedule set out in the original divorce decree. The chancellor declined to find either party in contempt for their actions. Aggrieved, Thomas appeals, asserting that: (1) the chancellor erred in failing to find a material change in circumstances sufficient to support a change in physical custody; (2) the chancellor erred by modifying the visitation schedule; (3) the chancellor erred in ordering him to pay $200 in child support for June and July 2006; (4) the chancellor erred in failing to order Stacy to pay $5,531 in mortgage arrearage payments; and (5) the chancellor erred in failing to find Stacy in contempt of court. Finding no error, we affirm the judgment of the chancery court.
STANDARD OF REVIEW
¶ 3. In child custody eases, “[a] chancellor’s decision cannot be disturbed ‘unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied.’ ” Barnett v. Oathout, 883 So.2d 563, 566(¶ 6) (Miss.2004) (quoting Madden v. Rhodes, 626 So.2d 608, 616 (Miss.1993)). Furthermore, “[t]he chancellor has the sole responsibility to determine the credibility of witnesses and evidence, and the weight to be given each.” Lee v. Lee, 798 So.2d 1284, 1288(¶ 14) (Miss.2001). In custody matters, this Court “shall not disturb the decisions of chancellors unless it is clear that justice and the law require us to do so.” Id. (citing Chamblee v. Ckamblee, 637 So.2d 850, 860 (Miss.1994)).
DISCUSSION
I. Whether the chancellor erred in failing to find a material change in circumstance sufficient to support a change in custody.
¶ 4. Thomas argues that the chancellor erred in failing to find a change in material circumstances in Stacy’s home sufficient to support a modification of the custody arrangement. In support of his argument, Thomas points to the fact that he was denied regular weekend visitations for a period of approximately nine months and that he was denied approximately 192 telephone conversations over a two-year period, both of which were contained in the original visitation schedule.
¶ 5. Generally, in order to obtain a new custody order, the non-custodial parent must first show “that since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child.” Lambert v. Lambert, 872 So.2d 679, 683-84(¶ 18) (Miss.Ct. App.2003) (citing Smith v. Jones, 654 So.2d 480, 486 (Miss.1995)). Under this rule, only after a finding of a material change has been made can the chancellor even consider altering the custody arrangement. Id. at 684-85 (¶¶ 22-25).
¶ 6. In this case, the chancellor correctly identified Thomas’s primary argument concerning material change to be based on the facts he alleged about Stacy’s interference with his visitation. Normally, visitation issues are not considered by the chancellor when entertaining a motion for a change of custody. Ellis v. Ellis, 952 So.2d 982, 994(¶ 27) (Miss.Ct.App.2006). However, we have noted that “[wjhile visitation issues should not normally be con *1061 sidered by the lower court when hearing a plea for custody modification, the supreme court has identified that interference with visitation may constitute a material change in circumstances given sufficient severity.” Id. Ellis involved, among other things, the testimony of three different child psychology experts on the negative impact that the visitation schedule was having on the child.
¶ 7. Thomas asserts that Stacy’s interference with his weekend visits and telephone calls affected his relationship with his son to such an extent that the chancellor erred in failing to find a material change in circumstances. We disagree. Although there was evidence adduced at trial that Stacy interfered with Thomas’s visitation rights under the custody agreement, there was also evidence presented that Thomas had, to some degree, interfered with Stacy’s rights under the agreement as well. Furthermore, none of the evidence presented to the chancellor gives this Court any reason to believe that Stacy’s interference with Thomas’s visitation rights was of a sufficient degree of severity that the chancellor was manifestly wrong or clearly erroneous in failing to find a material change in circumstances due to the issues with visitation. Accordingly, we find Thomas’s argument on this issue to be without merit.
II. Whether the chancellor erred in modifying the visitation schedule.
¶ 8. Thomas argues that the chancellor erred in modifying the visitation schedule because that modification unnecessarily interfered with his right to contract. It is true that “a property settlement agreement is no different than any other contract, ‘and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.’” Beezley v. Beezley, 917 So.2d 803, 807(¶ 13) (Miss.Ct.App. 2005) (quoting East v. East, 493 So.2d 927, 931-32 (Miss.1986)) (emphasis added).
¶ 9. The same, however, is not true of custody agreements and visitation schedules because they affect the interests of children. To modify a visitation schedule, the chancellor need only find that the original schedule is not working and a change is in the best interest of the child. H.L.S. v. R.S.R., 949 So.2d 794, 798(¶9) (Miss.Ct.App.2006) (citing Ellis v. Ellis, 840 So.2d 806, 812(¶25) (Miss.Ct.App. 2003)).
¶ 10. In this case, the record is replete with evidence indicating that the visitation schedule agreed to by Thomas and Stacy in the original divorce decree was not working, and that a modification of that schedule could benefit their son. We find absolutely no evidence that the chancellor was manifestly wrong or clearly erroneous in modifying the visitation schedule. Accordingly, we find Thomas’s argument on this issue to be without merit.
III. Whether the chancellor erred in ordering Thomas to pay child support for June and July 2006.
¶ 11. Thomas argues that the chancellor erred by ordering him to pay child support for the months of June and July 2006. Thomas bases his argument on a clause contained in his original divorce decree and property settlement agreement that allowed him a “grace period” of sixty days relief from paying the agreed $200 a month child support. The clause was to be executed “if needed” and only after Thomas graduated from law school, in order to give him time to study for the bar examination and seek employment.
¶ 12. Although not argued by either party, this Court is compelled to *1062 point out that parents cannot contract out of their obligation to pay child support, even for a short time. “[T]he duty to support children is a continuing duty on both parents and is a vested right of the child.” Lawrence v. Lawrence, 574 So.2d 1876, 1381 (Miss.1991). Accordingly, “parents cannot contract away rights vested in minor children. Such a contract would be against public policy.” Id. Therefore, the clause in the original divorce decree and settlement agreement attempting to grant Thomas a sixty-day reprieve from his child support obligations was void as a matter of public policy, and he was obligated to pay during June and July 2006, regardless of the factual findings of the chancellor. Accordingly, we find his argument on this issue to be without merit.
IV. Whether the chancellor erred in failing to award Thomas $5,531 in mortgage payment arrearages.
¶ 13. Thomas argues that Stacy is in arrears $5,531 on mortgage payments she agreed to make under the original property settlement and that, therefore, he should have been awarded this sum by the chancellor. The original property settlement agreement between Thomas and Stacy contains a clause whereby they agreed to split the mortgage payments on the marital home in half. Furthermore, Stacy admitted that she never paid her share of the mortgage after the divorce. The former marital home has now been sold, and all profits from the sale, as well as the remaining money in the court register, have gone to Thomas.
¶ 14. However, Thomas admitted that he would regularly withhold Stacy’s child support and put it toward paying her half of the mortgage. Thomas also admitted that he rented the house for $550 a month for a period of time before selling it. To further complicate matters, Stacy has apparently declared bankruptcy, listing Thomas as an unsecured creditor for her portion of the mortgage payments. Finally, Thomas may have paid off an existing judgment lien on the house that Stacy incurred before selling it.
¶ 15. As we have noted, this Court will not reverse the decision of a chancellor in a child custody case “unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied.” Madden, 626 So.2d at 616. In this case, the chancellor allowed Thomas to keep all profits from the sale of the former marital home, as well as all of the money that remained in the court register at the time this matter was decided. Stacy has now filed for bankruptcy and listed Thomas as an unsecured creditor. Accordingly, it is impossible for this Court to say that the chancellor committed manifest error in failing to order Stacy to repay the entire $5,531. Therefore, we find this issue to be without merit.
V. Whether the chancellor erred in failing to hold Stacy in contempt of court.
¶ 16. Finally, Thomas argues that this Court should remand this case with an order that the chancellor find Stacy in contempt of court for her interference with his visitation rights. “Contempt matters are committed to the sound discretion of the trial court, and this Court will not reverse where the chancellor’s findings are supported by substantial credible evidence.” Weston v. Mounts, 789 So.2d 822, 826(¶ 17) (Miss.Ct.App.2001). Finding no compelling reason to hold Stacy in contempt, we affirm the judgment of the chancery court on this issue. Accordingly, we find Thomas’s argument on this issue to be without merit.
*1063 ¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF LAUDER-DALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ„ CONCUR.