# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00375-COA

KENDRA MICHELLE MUNDAY                          APPELLANT

v.

ROBERT McLENDON                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2018 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEE TURNER |
| ATTORNEYS FOR APPELLEE: | BARRON CRUZ GRAY |
| | THOMAS T. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 12/03/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE BARNES, C.J., GREENLEE AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. Kendra Munday (Kendra) appeals the Perry County Chancery Court's decision to modify the child-custody agreement between her and her ex-husband, Robert McLendon (Robert). Following a hearing, the chancellor changed physical custody of the former couple's only child from Kendra to Robert. Kendra appealed, claiming that the chancellor erred in denying her motion for a continuance and awarding Robert physical custody. We find no abuse of discretion and therefore affirm the chancellor's judgment.

## FACTS

¶2. Kendra and Robert married on August 1, 2008. They had one child together—

B.A.M.[1]— born September 27, 2008. The couple later divorced on June 24, 2013. The child-custody agreement stated that Kendra would have physical custody of the minor child, with Robert receiving visitation every other Wednesday and every other weekend. The agreement further stated that Robert would receive five weeks of summer visitation. For regular bi-weekly visitation exchanges of the child, Robert and Kendra agreed to meet at a halfway point—McClain, Mississippi. The agreement allowed for Robert's family to assist in transportation for the visitation exchange. Robert and Kendra agreed to share joint legal custody, and Robert was ordered to pay $350 in child support. Finally, the agreement specified that in the event either parent moved or changed addresses or phone numbers, he or she must notify the other parent of the change and file the change in Perry County.

¶3.    On December 15, 2016, Robert filed a complaint for modification and citation of contempt.[2] Robert claimed that, since the entry of the divorce judgment, Kendra failed to allow him to make up over fifty days of visitation missed due to his work schedule, that she refused to respond to his text messages regarding B.A.M., that she refused to allow his family to pick B.A.M. up for visitation exchange, and that she had moved to Louisiana and failed to notify him of her address or B.A.M.'s school information. He also claimed that a material change in circumstances adversely affecting the child had occurred. The material changes

---

[1] We use initials to protect the minor child's identity.

[2] On June 16, 2016, Kendra filed a complaint for citation of contempt and for modification and other equitable relief. However, no service of process was issued or served.

2

included Kendra's move to Louisiana, Kendra's mother (who allegedly has a criminal record) babysitting the child, and the child coming to his house with a severe sunburn, flea bites, and dirty clothes.

¶4.	Kendra filed her answer and defenses to the complaint for modification and citation of contempt and a counterclaim for modification and contempt and other equitable relief. In her counterclaim, Kendra asserted that Robert failed to timely return the child from visitation. She also stated that the mid-week visitation was no longer feasible due to her move to Louisiana. As a result, Kendra requested that the court designate a new halfway point.

¶5.	The court appointed a guardian ad litem (GAL) on February 23, 2017. On February 27, 2017, the court entered a temporary order directing the parties to continue visitation as previously ordered and allowing the child to have her cell phone returned to her with no restrictions on calling or texting Robert. However, the court allowed Kendra to turn off any GPS/location services on the phone when the child was in her care. The court also ordered Robert and Kendra to each pay $1,000 for the GAL's representation.

¶6.	On March 28, 2017, Robert filed a complaint for citation of contempt of the temporary order, claiming that Kendra had refused to allow the child to text or call him and had withheld visitation. In her answer, Kendra denied Robert's allegations.

¶7.	The GAL submitted her report on January 29, 2018. Attorneys for both sides received a copy. That same day, Kendra filed a motion for continuance, claiming that she should have

also received a copy of the GAL's report since she lived too far away to review her attorney's copy. The court later denied the motion,[3] and the case proceeded to trial on February 1, 2018.

¶8. Kendra testified that she had three children—one with Robert, one child (six years old) from a previous relationship, and one child (six weeks old) with her current husband. Her youngest child suffers from hyperinsulinemia and hyperammonemia. At the time of trial, Kendra was not working outside of the home. She testified that she stopped working in May 2017 due to pregnancy complications.

¶9. Kendra testified that she moved to Abbeville, Louisiana, on December 1, 2016. Before her move, Kendra lived in Leakesville, Mississippi. She also testified that her mother, father, and brother live in Leakesville and that she had other relatives in the surrounding area. Kendra stated that her husband was a store manager and that the company discussed moving him to Nashville, Tennessee. Kendra stated that "[i]t would be a great opportunity, but there's nothing definite or set in stone."

¶10. When questioning Kendra, plaintiff's counsel showed her pictures[4] of B.A.M., sunburned. The child's body had blisters from the sunburn. Kendra testified that she had never seen B.A.M. with a sunburn like the one pictured. Regarding B.A.M.'s hygiene, Kendra stated that she made B.A.M. take a bath every day unless she spent the day "[lying]

---

[3] The court denied the motion for a continuance in its final judgment.

[4] The exhibit, Exhibit 3, was marked for identification only.

4

around the house."

¶11. Kendra stated that Robert was "well aware" of her move to Louisiana and B.A.M.'s change in schools. She testified that B.A.M. had done well in her new school and enjoyed participating in classroom activities. Kendra stated that B.A.M. was not involved in any extracurricular activities. When asked if she had ever inhibited B.A.M. from contacting her father, Kendra stated "no" and that the phone stayed in the child's room at all times.

¶12. Plaintiff's counsel questioned Kendra about Exhibit 11, which showed "screenshots" of Kendra's text messages. Specifically, Exhibit 11 showed Kendra's text messages to Robert about visitation on May 28, 2017. In one message, Kendra stated that she would meet Robert on May 28 at 6 p.m. She then stated that she could meet him in McClain at 5:30 p.m. Kendra's "screenshots" showed no response from Robert. Kendra's last text to Robert read: "[I]f you do not respond to this text letting me know that you are getting her today for her five-week visitation then I will assume you don[']t want her and you will forfeit visitations this summer."

¶13. Kendra was then asked about Exhibit 13, which displayed the same "screenshots" of text messages from Robert's phone. Curiously, Exhibit 13 showed the same text-message exchange, but with Robert's responses. Within his responses, Robert said he would meet Kendra at 5:30. Kendra claimed she never received Robert's responses, which was why she did not have his messages on her phone.

¶14. Robert testified that he lived in Richton, Mississippi, and worked at Georgia-Pacific

Leaf River Cellulose. He worked twelve-hour shifts, alternating between day and night. Robert also stated that he was married and that his wife was pregnant. He testified that Kendra texted him two weeks before she planned to move to Louisiana. Robert informed her that he did not think it was a good idea to move their daughter away from all her friends and family. Robert also stated that he had numerous family members in the area, including an aunt, four cousins, and his in-laws.

¶15. Robert filed his complaint because Kendra had moved to Louisiana, and Kendra was no longer cooperating with visitation. Plaintiff's counsel showed Robert Exhibit 4, a calendar of the child's missed school days at her new school in Vermillion Parish from August 2017 to January 2018. Robert testified that he knew some of the missed days were due to illness and visiting Kendra's family.

¶16. Robert also testified about B.A.M.'s poor hygiene. For example, when he picked her up for visitation, he brought clothes for her to change into "because she would stink." He stated the first thing she did at his house was take a shower.

¶17. When reviewing Exhibit 3, the pictures of B.A.M.'s sunburn, Robert testified that she came from Kendra's house with the sunburn. When he addressed Kendra about the sunburn, Kendra stated that she did not notice the sunburn because they were out in the yard that day. Another picture from Exhibit 3 showed B.A.M. with bug bites. Robert testified that they were flea bites, and that the bites were visible when she arrived at his house for weekend visitation. He also testified that he called Mississippi Department of Human Services three

times to report the sunburn and flea bites.

¶18.    Kayla McLendon testified that she had a great relationship with her stepdaughter. At the time of trial, Kayla worked as a teller at a local bank. She worked normal business hours, usually Monday through Friday. She stated that when B.A.M. would come for visitation, she often smelled "nasty" like she had not had a bath. Kayla applied medicine to the child's back when she had blisters from the sunburn. She also stated that she called Forrest General about the blisters and spoke with an on-call nurse. Kayla had also seen the flea bites on the child during their visitation.

¶19.    Kayla testified that she and Robert gave B.A.M. a watch phone and often had difficulty getting in touch with her when she was with Kendra. For example, Robert would text B.A.M. and not hear back from her for "an extended period of time." She also stated that the phone at one time had been "turned off for months." Kayla also testified that Robert had problems getting B.A.M. for visitation. She further stated that they attempted make-up visitations for when Robert had missed due to work, but they were unsuccessful because Kendra would not cooperate.

¶20.    The GAL's testimony mirrored her report. She conducted home visits in both parents' homes. She also met with both stepparents, who she determined had good relationships with the child. The GAL was concerned about the child's high number of absences in her Louisiana elementary school. From December 2016 to May 2017, she had seven full absences, one half day, with two listed as "other." All those absences required a doctor or

parent note. The GAL referred to a statement at the bottom of the child's transcript, which stated that the parent of a child who is absent without an excuse more than five times in a semester may be prosecuted in a court of law. Despite her absences, B.A.M. was still making good grades.

¶21. The GAL expressed concerns about Kendra possibly "parent coaching" B.A.M. before their interview. The GAL thought B.A.M. seemed to know much more than a child her age should about her parents' custody issues. For instance, Kendra allegedly told B.A.M. not to tell Robert about their potential move to Tennessee.

¶22. The GAL did investigate Robert's concerns about the child's hygiene and found Kendra did have appropriate clothing for the child. In regard to Robert and Kendra's communication issues, the GAL explained that Kendra was allowed to turn the watch phone off based on the previous court order, because the watch phone had GPS tracking.

¶23. The GAL found that, under the totality of circumstances, modification should be considered. The GAL then went through the *Albright*[5] analysis and recommended that physical custody be awarded to Robert.

¶24. After the hearing, the chancellor issued an order, finding Kendra in civil contempt for denying Robert visitation. The chancellor denied Kendra's counterclaim for contempt. Finally, the chancellor determined there had been a material change in circumstances that adversely affected the child. After conducting an *Albright* analysis, she determined that the

---

[5] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

child should be placed in Robert's physical custody, with both parties maintaining joint legal custody. The court awarded Kendra liberal visitation and ordered to her to pay $100 in monthly child support. Kendra appeals.

## STANDARD OF REVIEW

¶25. The standard of review for a child-custody case is a narrow one. We will not reverse unless the trial court made findings that are manifestly wrong or clearly erroneous or applied an improper legal standard. *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012) (citations omitted).

¶26. In appeals from child-custody decisions, "our polestar consideration," like the chancellor's, "must be the best interest of the child." *Montgomery v. Montgomery*, 20 So. 3d 39, 42 (¶9) (Miss. Ct. App. 2009) (quoting *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶8) (Miss. 2002)). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004) (quoting *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)).

## ANALYSIS

### 1. Material Change in Circumstances

¶27. A modification of custody is warranted when the moving parent successfully shows "(1) that a material change of circumstances has occurred in the custodial home since the

most recent custody decree, (2) that the change adversely affects the child, and (3) that modification is in the best interest of the child." *Powell v. Powell*, 976 So. 2d 358, 361 (¶11) (Miss. Ct. App. 2008) (citing *Giannaris v. Giannaris*, 960 So. 2d 462, 467-68 (¶10) (Miss. 2007)).

¶28. Totality of the circumstances can serve as a basis for a material change. *See, e.g.*, *Minter v. Minter*, 29 So. 3d 840, 850 (¶37) (Miss. Ct. App. 2009). The chancellor must consider the totality of the circumstances when determining whether such a material change in circumstances has occurred. *Creel v. Cornacchione*, 831 So. 2d 1179, 1183 (¶15) (Miss. Ct. App. 2002). If, after examining the totality of the circumstances, a material change in circumstances in the custodial home is found to have occurred, the chancellor "must separately and affirmatively determine that this change is one which adversely affects the child[ ]." *Bredemeier v. Jackson*, 689 So. 2d 770, 775 (Miss. 1997) (citation omitted).

¶29. "Although Mississippi law generally has recognized that a parent's relocation alone does not constitute a material change in circumstances, we note that the impact of a relocation of the custodial parent upon the child constitutes a factor that the chancellor permissibly considers on the motion for modification." *Robinson v. Brown*, 58 So. 3d 38, 43 (¶13) (Miss. Ct. App. 2011) (citing *Lambert v. Lambert*, 872 So. 2d 679, 685 (¶24) (Miss. Ct. App. 2003)). This Court has found even a short move can result in a material change in circumstances where the move causes the custody agreement to become impractical. *Id*. at (¶14) (citing *Pearson v. Pearson*, 11 So. 3d 178, 182 (¶10) (Miss. Ct. App. 2009)).

¶30. In awarding Robert physical custody of the minor child, the chancellor stated the following in her opinion:

> [T]he GAL's Report and Recommendations are supported by the preponderance of the credible evidence presented at trial . . . . The Court **adopts the findings**, report and recommendations of the Guardian ad Litem as to the custody of the minor child[] made at the conclusion of trial and finds those recommendations to be in keeping with the best interests of the child[] above all else.
>
> . . . .
>
> Based on the preponderance of the credible evidence and consideration of the factors set out above, including the GAL's *Albright* analysis from trial which the Court has adopted, and **the totality of the circumstances**, the Court finds Kendra and Robert shall continue to have joint legal custody of their child . . . but that Robert shall now have the primary physical custody . . . .

(Emphasis added). The GAL's report, which was "adopted" by the chancellor, detailed the totality of circumstances warranting modification:

> In the matter at hand, it appears that there has not been one specific event that **warrants a modification** of custody, but when **considering the totality of the circumstances, a modification is warranted**. Taking into consideration the lack of communication regarding the move to Louisiana and the transfer to a new school, removing [B.A.M.] from her extended family and friends, the numerous absences which, under Louisiana law, could subject Kendra to prosecution, the alleged move to Tennessee, and the breakdown of communication between father and daughter caused by the mother, lead me to believe that the minor child has been adversely affected both emotionally and mentally by the current custodial arrangement and an *Albright* analysis is appropriate.

(Emphasis added). The GAL's testimony mirrored her report.

¶31. Kendra takes issue with the fact that the chancellor adopted the GAL's findings but did not specify in her order that a "material change in circumstances" had occurred. The

11

chancellor wrote a twenty-page opinion, detailing the procedural history and the facts she found from the testimony from trial. The chancellor also provided an analysis to each issue raised, supporting each issue with relevant case law and the correct legal standards. In fact, she devoted five pages of her opinion to the issue of custody modification and provided a detailed legal discussion of what constitutes a material change, including that a totality of the circumstances warranted a change in custody. Although the chancellor did not spell out in her opinion what "material change in circumstances" had occurred, she clearly found facts that supported that it had occurred.[6] The chancellor made those detailed findings after hearing testimony and adopting the GAL's report. As previously stated, the GAL's report and testimony made specific findings of fact and explicitly stated the totality of the circumstances warranting modification.[7]

¶32. We find the chancellor's opinion, adopting the findings of the GAL, sufficiently explained what material change adversely affected the child, and why a change in custody was warranted. Further, viewing the totality of the circumstances, we cannot say the

---

[6] "We fully recognize that chancellors are overburdened . . . . Chancellors are required to follow the testimony of witnesses, review documents offered as exhibits, and attempt to make contemporaneous notes." *Lowrey v. Lowrey*, 25 So. 3d 274, 280 (¶7) (Miss. 2009). Applying a rigid, formalistic "word" requirement in each order that is otherwise clear as to the judge's findings of fact and conclusions of law would only add to the burdens of work the court system maintains daily. However, it may be the safer practice to include those words in orders in the future since it is not hard to envision a written order not as detailed or as clear as the one in this case.

[7] The chancellor's written opinion is clear as to the facts found from the evidence and that under a totality of those circumstances, modification was warranted.

12

chancellor erred by finding that a material change in circumstances had occurred since the time of the original custody decree. Accordingly, we affirm the chancellor's finding.

## 2. *Albright* Factors

¶33. After finding an adverse material change, "the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest." *White v. White*, 26 So. 3d 342, 351 (¶28) (Miss. 2010). The *Albright* factors are as follows: (1) age, health, and sex of the child; (2) continuity of care prior to the separation; (3) parenting skills and the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) the moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. *Albright*, 437 So. 2d at 1005.

¶34. The chancellor found the following factors favored Robert: parenting skills; home, school, and community record of child; and stability of home environment and employment. The chancellor found one factor—continuity of care—favored Kendra and that the remaining factors were neutral.

¶35. Kendra asserts the chancellor erred in finding several factors in Robert's favor. She additionally claims that some factors found to be neutral weighed in her favor. An *Albright*

13

analysis is not a mathematical equation. *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001). Additionally, the factors are not meant to be weighed equally in every case. *Divers v. Divers*, 856 So. 2d 370, 376 (¶27) (Miss. Ct. App. 2003). Our supreme court has held that "[a]ll the [*Albright*] factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way [she] sees fit." *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003). "The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." *Id*.

¶36. "In order to determine whether or not the chancellor was manifestly wrong [or] clearly erroneous[,] or abused [her] discretion in applying the *Albright* factors, we review the evidence and testimony presented at trial . . . to ensure [her] ruling was supported by the record." *Hollon v. Hollon*, 784 So. 2d 943, 947 (¶13) (Miss. 2001).

¶37. Kendra first challenges the chancellor's finding under the factor of age, health, and sex of the child. B.A.M. was nine years old and in generally good health at the time of the hearing. The GAL noted that B.A.M. used to get allergy shots in Mississippi, but treatment ceased when she moved to Louisiana. Kendra argues that a fit mother should be awarded custody of a child of tender years, especially a female. *See, e.g.*, *Buntyn v. Smallwood*, 412 So. 2d 236, 238 (Miss. 1982) (awarding custody of female child of five years of age to mother). But "a child is no longer of tender years when that child can be equally cared for by persons other than the mother." *Mercier v. Mercier*, 717 So. 2d 304, 307 (¶15) (Miss.

14

1998). Our supreme court has held that "seven is long past the age that requires this type of special care from her mother." *Id*. The chancellor found this factor favored neither party. We find that the chancellor was within her discretion to do so.

¶38. Kendra next challenges the chancellor's finding under the factor of parenting skills. The chancellor noted that both parents questioned each other's parenting skills. For example, Robert claimed that Kendra dressed B.A.M. in dirty old clothes and did not bathe her regularly. Robert also referred to B.A.M.'s excessive absences in her new school, under Kendra's care. The chancellor ultimately found this factor favored Robert because B.A.M.'s tardiness and absences reflected negatively on Kendra's parenting skills. "The chancellor, by [her] presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of these witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Rogers v. Morin*, 791 So. 2d 815, 826 (¶39) (Miss. 2001) (quoting *Carter v. Carter*, 735 So. 2d 1109, 1114 (¶19) (Miss. Ct. App. 1999)). As substantial evidence supported the chancellor's decision and the decision was not manifestly erroneous, we do not find error.

¶39. Kendra also challenges the chancellor's finding under the factor of home, school, and community record of the child. The chancellor found this factor also favored Robert. She based her finding on B.A.M.'s poor school attendance and Robert's proximity to friends and family. We find substantial evidence in the record to support the chancellor's decision.

¶40. Lastly, Kendra challenges the chancellor's finding on the stability of the home

15

environment and employment of each parent. The chancellor found this factor favored Robert. She reasoned that Robert lives near extended family. She also referenced the fact that the child indicated she had been taken to Tennessee in preparation for the family moving there. After review, we find the chancellor was within her discretion to find this factor favored Robert.

### 3. Kendra's Motion for a Continuance

¶41. Defense counsel received a copy of the GAL report on January 29, 2018—three days before trial. That same day, defense counsel filed a motion for a continuance and requested a copy for Kendra, who could not view her attorney's copy since she lived hours away. The trial proceeded as scheduled, and defense counsel did not raise the issue at trial or object to the GAL's testimony. The chancellor ultimately denied Kendra's motion in her final judgment. Kendra argues the denial was error because she did not have the opportunity to review and submit useful documentation relevant to the child's multiple unexcused school absences.

¶42. "The decision to grant or deny a motion for a continuance is within the discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." *In re Dissolution of Marriage of Profilet*, 826 So. 2d 91, 93 (¶6) (Miss. 2002) (citing *Coleman v. State*, 697 So. 2d 777, 780 (Miss. 1997)).

¶43. As previously stated, Kendra made no objection at trial to the GAL's report or her testimony. Interestingly, Kendra chose not to testify during her case-in-chief. She only

testified as an adverse witness in Robert's case-in-chief. At trial, Robert introduced Exhibit 4, a calendar of the child's missed school days. During her testimony, Kendra offered no explanation for B.A.M's absences. Further, Kendra never submitted a discovery request to investigate any of Robert's evidence prepared for trial.

¶44. "It is very generally held that a failure to object to evidence at the time it is offered is a waiver of all objections to its admissibility . . . [and] waives previous objections to the admissibility of the fact testified to." *Huff v. State*, 176 Miss. 443, 169 So. 839, 840 (Miss. 1936) (quoting Griffith's Chancery Practice § 579, at 642; 64 C.J. §§ 190-91, at 169). Thus, defense counsel's failure to object to the admission of the GAL report at trial resulted in a waiver. Waiver notwithstanding, Kendra has failed to show how the admission of the report resulted in "manifest injustice." Accordingly, we find the chancellor was within her discretion to deny Kendra's motion for a continuance.

## CONCLUSION

¶45. We find substantial evidence in the record to support the chancellor's finding of a material change in circumstances that adversely affected the child and the award of physical custody to Robert. We also find the chancellor acted within her discretion by denying Kendra's motion for a continuance. Accordingly, we affirm the chancery court's judgment.

¶46. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**